In re the Marriage of Michael W.
PETTIT, Appellant (Respondent
below),

v.

Donna K. PETTIT, Appellee
(Petitioner below).

No. 02S03–9312–CV–1421.

Supreme Court of Indiana.

Dec. 27, 1993.

Joseph Christoff and Catherine Christoff, Fort Wayne, for appellant.

Pamela Carter, Atty. Gen., Gordon E. White, Jr. and Matthew R. Gutwein, Deputy Attys. Gen., Indianapolis, for appellee.

William J. Boklund, La Porte, Michael G. Gotsch, South Bend, Stephen J. Johnson, Indianapolis, for amicus curiae, Indiana Prosecuting Attorneys Council.

SULLIVAN, Justice.

We grant transfer to decide that a child support obligation is enforceable by contempt.

Donna K. Pettit (Appellee–Petitioner below) seeks transfer after the Court of Ap-

peals reversed the trial court's finding that Michael W. Pettit (Appellant–Respondent below) was in contempt for failing to pay child support. *Pettit v. Pettit* (1993), Ind. App., 612 N.E.2d 1090.

## Facts

The Pettit's were divorced in 1983. Michael was ordered to pay child support for the couple's three children. In 1987, at a time when Michael's net income was $404 per week, Michael's support obligation was increased to $160 per week, where it remains today. In October, 1989, upon being notified of an indefinite layoff from his employment, Michael moved for an interim support order.

In July, 1990, Michael was terminated from his employment. He was hired by another company the next month, but at a reduced income. As a result, Michael petitioned for modification of his support obligation based on his change in circumstance and requested another interim order to abate support during the brief period he was unemployed.

These motions were denied after a hearing in October, 1990. The trial court found that Michael was discharged from his employment "due to his conduct" and that he was in arrears on support, and ordered him to pay the arrearage.

Michael remained in limited employment thereafter. In June, 1991, he again petitioned for modification of his support obligation alleging a substantial and continuing change in circumstances. Donna moved to dismiss the petition arguing that the October, 1990, order was *res judicata* on this issue. After a hearing before a different judge, the trial court granted Donna's motion to dismiss, ordered Michael to pay the support arrearage, found that he had resources from which to pay the arrearage by borrowing, and found him in

contempt of court for nonpayment. The trial court refused to consider evidence of Michael's present earning capacity as grounds for a modification of support because the October, 1990, order specified that Michael lost his job due to his conduct. The trial court stated that until there was a substantial change in circumstances, his income must continue to be imputed at the level he earned in 1987.

Michael appealed on the grounds that (i) he was entitled to present evidence about his changed circumstances and (ii) the evidence was insufficient to support the finding of contempt. The Court of Appeals agreed, reversed the trial court, and remanded the matter for hearing. 612 N.E.2d at 1093. The Court of Appeals also addressed an issue not raised by the parties, and concluded that contempt was not a remedy available to Donna because she had assigned her right to collect child support payments. *Id.*

Donna seeks transfer only on the issue of contempt.

### Contempt as an Enforcement Tool

Child support obligations have long been enforceable by contempt in Indiana. In 1865, this Court observed that the obligation of a parent to provide support for a child "is founded in *nature*, not in contract." *Lower v. Wallick* (1865), 25 Ind. 68, 73, citing 1 *William Blackstone, Commentaries* *447 (emphasis in original).

*Lower* was the first of a long series of cases decided by this state's appellate courts establishing that child support obligations arise out of a natural duty of the parent and not from a debt of the obligor. As a result, the proscription against imprisonment for debt in Article I, § 22, of our constitution [1] does not prevent the use of contempt to enforce child support obligations.[2] *Corbridge v. Corbridge* (1952),

---

1. Article I, § 22 provides:
 The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted; and there shall be no imprisonment for debt, except in case of fraud.

2. While imprisonment is commonly thought of as the sanction for contempt, courts can and do employ a variety of non-custodial sanctions,

230 Ind. 201, 207, 102 N.E.2d 764, 767; *Stonehill v. Stonehill* (1896), 146 Ind. 445, 447, 45 N.E. 600, 601; *Esteb v. Enright* (1990), Ind.App., 563 N.E.2d 139, 141; *Thompson v. Thompson* (1984), Ind.App., 458 N.E.2d 298, 300.

In addition, the legislature has specifically recognized that contempt is available as one tool to enforce child support payments. *Ind.Code Ann.* § 31–1–11.5–17(c) (West Supp.1993). This Court has also recognized the inherent powers of a trial court to use contempt as a remedy in the context of child support. *Corbridge,* 230 Ind. at 207, 102 N.E.2d at 767; *Stonehill,* 146 Ind. at 447, 45 N.E. at 601.

Nor do procedural steps taken by a court to assist in the collection of child support payments affect the availability of contempt. Upon the request of the parent to whom child support is owed and the entry of the requisite findings, trial courts may, as in the instant case, compute the amount and order the payment of accrued arrearages or, as in other cases, enter a money judgment against the delinquent parent for past due amounts. We view such orders and judgments, at least as they relate to child support payments in respect of unemancipated children,[3] as natural extensions of the court's efforts to assure that parents live up to their duties to their children. As such, the nature of a parent's underlying obligations remain unchanged and it is unduly formalistic and contrary to sound public policy to consider the entry of such an order or judgment as somehow changing the obligation in such a way as to make contempt unavailable to assist in its enforcement.

The Supreme Court of Florida has provided a particularly helpful discussion as to why child support obligations should be enforceable by contempt, even if reduced to a money judgment:

Establishing a support decree as a money judgment does not destroy the decree as an order to pay support nor is the obligation reduced to an ordinary judgment debt enforceable only at law.... The purpose of the award remains the payment of support to the former spouse or the children regardless of its form.... *Ostrander v. Ostrander,* 190 Minn. 547, 252 N.W. 449, 450 (1934). A decree for support is different than a judgment for money or property: It is a continuing obligation based on the moral as well as legal duty of a parent to support his or her children. *Sackler* [*v. Sackler* ], 47 So.2d [292,] at 294 [ (Fla. 1950) ] (quoting *Rule v. Rule,* 313 Ill. App. 108, 39 N.E.2d 379 (1942)). Because of this difference, a judgment for support should be enforced by more efficient means than ordinary execution at law. To hold that such a judgment can be enforced only by execution at law would amount to depriving a support award of its inherent power of enforcement by contempt. *McDuffie* [*v. McDuffie,* 155 Fla. 63], 19 So.2d [511] at 513 [ (1944) ]. The courts have a duty to provide an effective, realistic means for enforcing a support order, or the parent or former spouse for all practical purposes becomes immune from an order for support. In our view, this duty includes enforcement of a judgment of support by equitable processes of the court because a remedy at law that is ineffective in practice is not an adequate remedy.

*Gibson v. Bennett,* 561 So.2d 565, 569 (Fla. 1990). *See also Middleton v. Middleton,* 329 Md. 627, 620 A.2d 1363, 1368–9 (1993); *Ex parte Wilbanks,* 722 S.W.2d 221, 224 (Tex.Ct.App.1986). For the same policy reasons, child support obligations are not dischargeable under the Bankruptcy Code. 11 U.S.C.A. § 523(a)(5) (West 1993). The bankruptcy cases make clear that even child support obligations that have been

---

e.g., requiring the party in contempt to seek a job or perform community service.

**3.** In *Corbridge,* 230 Ind. at 207, 102 N.E.2d at 767, we held that upon a child's emancipation, any child support in arrears becomes, in effect, a debt not enforceable by contempt. The issue

of emancipation is not before us in the instant case and so we render no opinion as to the availability of contempt to enforce child support delinquencies in respect of emancipated children.

reduced to a money judgment are nondischargeable. *See, e.g., Hylek v. Hylek,* 148 F.2d 300, 302–3 (7th Cir.1945); *In re Cope,* 35 B.R. 287, 288–9 (Bankr.W.D.Mich.1983). *See also In re Coleman,* 56 B.R. 179, 180 (Bankr.N.D.Ind., 1986) (statutory interest on child support judgment nondischargeable).

■ Therefore, we hold that contempt is always available to assist in the enforcement of child support, at least in respect of unemancipated children, including orders to pay accrued arrearages and money judgments against delinquent parents for past due amounts. In so doing, we disapprove previous decisions which held that once a child support obligation was transformed into a money judgment, contempt was unavailable as a remedy. *See, e.g., DeMichieli v. DeMichieli* (1992), Ind.App., 585 N.E.2d 297, 301; *Chapman v. Chapman* (1987), Ind.App., 512 N.E.2d 414, 418.

■ Our holding is limited to the use of contempt to assist in the enforcement of money judgments for child support. Except for this limited situation, grounded in the unique natural relationship of parent and child, the general rule that money judgments are not enforceable by contempt remains unaffected by our decision today. *See, e.g., State ex rel. Shaunki v. Endsley* (1977), 266 Ind. 267, 268, 362 N.E.2d 153, 154 (alimony judgment); *Bahre v. Bahre* (1967), 248 Ind. 656, 661–2, 230 N.E.2d 411, 415 (attorney fees); *Marsh v. Marsh* (1904), 162 Ind. 210, 212, 70 N.E. 154, 155 (alimony judgment).

■ Nor is contempt available in every case where a child support delinquency arises. Only upon a finding by the court that the delinquency was the result of a willful failure by the parent to comply with the support order and that the delinquent parent has the financial ability to comply is contempt available. *Brown v. Brown* (1933), 205 Ind. 664, 668, 187 N.E. 836, 838; *Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608, 614.

**4.** The Title IV–D Program also facilitates the state's assisting in other ways, such as establish-

### Assignment of Support Obligations

■ The Court of Appeals held that "an assignment of a support obligation is no longer enforceable by contempt as it constitutes an amount owed to the state by the delinquent parent and, thus, becomes enforceable as any other money judgment." 612 N.E.2d at 1093. Because a money judgment for delinquent child support *is* enforceable by contempt, the conclusion of the Court of Appeals in this regard is based upon an incorrect premise. We nevertheless address whether Donna's assignment of her right to collect support to the state altered in any way the remedies that were available. We begin with the well-settled principle of contract law that a valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor. *Rasp v. Hidden Valley Lake, Inc.* (1988), Ind.App., 519 N.E.2d 153; *Indiana & Michigan Elec. Co. v. Terre Haute Industries* (1984), Ind.App., 467 N.E.2d 37, 42. Unless a contrary intent is shown, the assignee stands in the shoes of the assignor.

Donna was a participant in the Title IV–D Child Support Enforcement Program of the Federal Social Security Act, 42 U.S.C.A. § 652–66, and she was, therefore, required to assign her right to collect support payments to the state. The Title IV–D Program in Indiana, operated in each county by the office of the prosecuting attorney, *Ind.Code Ann.* § 12–17–2–18 (West Supp.1993), is designed to ensure that children are provided adequate financial support by their parents. Parents receiving payments under Aid to Families with Dependent Children, 42 U.S.C.A. §§ 601–10, are required to assign support rights they have against the non-custodial parent for the child support to the state. 42 U.S.C.A. § 602(a)(26) (West 1993). Other single parents may participate in the program voluntarily. 42 U.S.C.A. § 654(6) (West Supp.1993). In return, the state is an active participant in proceedings to collect child support obligations.[4] Donna is a

ing paternity, locating parents, and collecting support through wage withholding, liens on

voluntary participant in the Title IV–D program. As such, 100% of the amounts collected by the state are distributed to her on behalf of her children.[5]

In participating in the Title IV–D program, Donna assigned to the state her rights to collect child support. We find nothing to indicate that Donna did not intend to assign her right to seek enforcement of court orders through contempt. It follows, then, that if contempt was a remedy available to Donna, contempt was a remedy available to the state. Accordingly, the trial court had the authority under these circumstances to use its contempt power.

### Evidence Insufficient to Find Contempt

 On the issue of whether the evidence supported the trial court's finding that Michael was in contempt, the Court of Appeals found that there was no evidence to establish that Michael was able to pay the child support or that his failure to comply with the order to pay was willful. 612 N.E.2d at 1093. On transfer, neither Donna nor Michael challenged that conclusion.

Contempt is not appropriate unless the parent has the ability to pay the support due and his failure to do so was willful. *Brown*, 205 Ind. at 668, 187 N.E. at 838; *Whitman*, 405 N.E.2d 608, 614.

Here, Michael testified that he was aware that he was in arrears and had no sources other than borrowing to pay it. He testified that a bank had rejected his loan application because he and his present wife did not have enough income, and therefore, his parents would be the only possible source of a loan. However, there was no evidence that his parents were willing or able to make the loan and, of course, they were not obligated to do so. In short, there was no evidence that Michael's failure to pay was willful.

### Modification of Support Order

The Court of Appeals held that the trial court improperly dismissed Michael's petition to modify his support obligation and remanded the case for hearing on Michael's motion. Donna does not seek transfer on that issue. Because we agree with the resolution of that issue by the Court of Appeals, we adopt that portion of the opinion pursuant to Indiana Appellate Rule 11(B)(3).

### Conclusion

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals, and reverse the trial court. This matter is remanded to the trial court for a hearing on Michael's petition to modify.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

The only debt for which imprisonment is constitutional is debt based on fraud. Ind. Const. art. I, § 22. Debt based upon any other ground cannot support imprisonment. It cannot constitutionally be said that a

---

property, and withholding from unemployment compensation and tax refunds. 42 U.S.C.A. §§ 654, 664, 666. One of the purposes of Title IV–D is to reimburse state and federal governments for AFDC expenditures which are often necessitated by an absent parent's failure to honor support obligations.

5. Distribution of support proceeds to parents who receive AFDC payments is treated differently. The first $50 of support collected in a given month are distributed directly to the AFDC household, in addition to the household's regular AFDC payment. 42 U.S.C.A. § 657(b)(1). Payments in excess of that amount are paid to the government as reimbursement for that

month's AFDC award. 42 U.S.C.A. § 657(b)(2). Any amount over the household's AFDC award for that month are also distributed to the household. If the sum collected is for past due support, the excess support goes to the government to reimburse it for past unreimbursed AFDC payments. 42 U.S.C.A. § 657(b)(4)(A). If there are no unreimbursed AFDC payments, the overage goes directly to the household. 42 U.S.C.A. § 657(b)(4)(B). The fact that support proceeds are handled differently for AFDC recipients, however, does not alter the responsibility of a non-custodial parent to his children. *See Matter of Paternity of Humphrey* (1991), Ind., 583 N.E.2d 133, 135.

debt based upon a support obligation can support imprisonment. It has, of course, properly been held that a support obligation is not a debt, *Davis v. State* (1985), Ind.App., 481 N.E.2d 434, and can support imprisonment. However, when a support obligation is "reduced" to a money judgment in the form of A shall recover X number of dollars from B, the support obligation which is "reduced" is transformed into a money judgment, a debt, and the support obligation no longer exists. The process for enforcement of a judgment or a decree for the payment of money is set forth in Ind.Trial Rule 69, and includes execution and proceedings supplemental. Imprisonment is not part of the process. If A has X number of dollars and does not satisfy the judgment against him in favor of B, he may not be imprisoned for contempt of court for simply holding onto his money, because: 1) the Indiana constitution forbids it, Ind. Const. art. I, § 22; and 2) a simple money judgment does not contain a court-imposed obligation, the violation of which could constitute a contempt of court.

Ind.Code § 31–1–11.5–17 sanctions imprisonment for "all orders and awards" contained in a dissolution decree. Contrary to an argument before the Court on the point, this provision does not sanction imprisonment for a money judgment.