**Charlotte A. JENKINS (Weybright), Appellant–Petitioner,**

v.

**Arden JENKINS, Appellee–Respondent.**

No. 43A03–9704–CV–136.

Court of Appeals of Indiana.

Nov. 21, 1997.

Rehearing Denied Jan. 26, 1998.

Charlotte A. Jenkins Weybright, Fort Wayne, pro se.

Allen R. Stout, Latrialle Wheat, Angola, for Appellee–Respondent.

## OPINION

STATON, Judge.

Charlotte A. Jenkins Weybright appeals from the trial court's use of its contempt power to enforce its judgment that Weybright failed to pay $14,265 in child support. Weybright also appeals from the trial court's modification of her child support obligation. Weybright raises three issues on appeal, which we restate as:

I. Whether the trial court erred by using its contempt power to force Weybright to pay her child support arrearage.

II. Whether the trial court erred by modifying its existing child support order where the youngest child covered by the support order reached the age of twenty-one prior to the modification petition being filed.

III. Whether the trial court's findings are incorrect insofar as they hold Weybright responsible for paying weekly child support for a period of approximately nine months beyond the date her youngest child reached the age of twenty-one.

We affirm in part, reverse in part, and remand.

Weybright and Jenkins were divorced on April 13, 1977. Weybright was originally granted custody of all four of their children; however, by April of 1983, Jenkins had obtained custody of the three youngest children. On September 3, 1985, the Kosciusko Superior Court ordered Weybright to pay $45 per week in child support for the three children in Jenkins' custody.

On January 31, 1996, Jenkins filed a petition in Kosciusko Superior Court seeking to modify the 1985 child support order as it pertained to the youngest child, C.J. Jenkins requested that the court increase Weybright's weekly child support obligation and that it require Weybright to pay a portion of C.J. education expenses. In his petition, Jenkins asserted that C.J., who was still a student at Purdue University, had not yet been emancipated. At the time Jenkins filed his petition, C.J. was twenty-one years old.

Jenkins also filed a second petition seeking the payment of past-due child support and requesting that the court hold Weybright in contempt of court for failure to pay child support owed as a result of the 1985 order. Jenkins alleged that Weybright had paid no child support since the order was entered in 1985.[1] Jenkins also requested that the court

1. The trial court later found that Weybright had paid some, but not all, of her child support obligation.

award him attorney's fees incurred in connection with his action to collect child support.

On October 17, 1996, the trial court entered an order requiring Weybright to pay a portion of C.J. education expenses and increasing Weybright's weekly support obligation. The court also found Weybright in contempt of its 1985 child support order, and ordered her to pay $14,265 in back child support, plus statutory interest. Too, the court ordered Weybright to pay Jenkins' reasonable attorney's fees.

## I.

### Contempt

■ Weybright contends that it was error for the trial court to hold her in contempt as a means of forcing her to pay her child support arrearage. Weybright concedes that if her children were still unemancipated, the trial court would have the authority to use its contempt power to compel her to pay child support. In *Pettit v. Pettit*, 626 N.E.2d 444 (Ind.1993), the Indiana Supreme Court held that "contempt is always available to assist in the enforcement of child support," so long as the children remain unemancipated. *Id.* at 447. However, the court refused to express an opinion as to whether contempt is available to enforce child support arrearage after children are emancipated. *Id.* at 446, n. 3. Since it refused to say otherwise in *Pettit*, Weybright argues that the Indiana Supreme Court's earlier opinion in *Corbridge v. Corbridge*, 230 Ind. 201, 102 N.E.2d 764 (1952), controls.

In *Corbridge*, the supreme court held that a court may not use its contempt power to coerce the payment of child support where a child has reached the age of majority. *Id.* at 767. In so limiting the use of contempt, the court reasoned:

The extraordinary remedy of attachment for a civil contempt of court is available, not for the protection of the one having

custody of the child, but for the benefit of the child, so that it may not want for necessities during the period of its minority. When the child reaches its majority the purpose and justification for the extraordinary remedy cease, and the court has no right to coerce the back payments of support by imprisonment.

*Id.* Since *Corbridge*, this court has repeatedly followed its holding. *See Kuhn v. Kuhn*, 172 Ind.App. 665, 361 N.E.2d 919, 921 (1977); *Ross v. Ross*, 397 N.E.2d 1066, 1070 (Ind.Ct. App.1979); *Brancheau v. Weddle*, 555 N.E.2d 1315, 1318 (Ind.Ct.App.1990).

Jenkins urges us not to follow *Corbridge* because the General Assembly has since enacted a statute which specifically allows a court to use the contempt power to enforce its child support orders.[2] IND. CODE § 31–1–11.5–17(c) (1993) (recodified at IND. CODE § 31–16–12–1 pursuant to 1997 Ind. Acts, P.L. 1) provides that all orders and awards contained in a divorce decree may be enforced by contempt. Since the order requiring Weybright to pay child support was contained in a divorce decree, Jenkins argues that this statute allows a court to enforce its child support order through its contempt power, even after a child has been emancipated.

In *State ex rel. Shaunki v. Endsley*, 266 Ind. 267, 362 N.E.2d 153 (1977), the Indiana Supreme Court addressed the impact of IND. CODE § 31–1–11.5–17 on a court's power to hold a person in contempt for failure to pay an alimony judgment. Prior to considering the effect of this statute, the Indiana Supreme Court held that contempt could not be used to enforce alimony judgments. *Id.* at 153–54 (citing *State ex rel. Schutz v. Marion Superior Court*, 261 Ind. 535, 307 N.E.2d 53 (1974)). In holding that IND. CODE § 31–1–11.5–17 did not change its prior decisions, the court stated, " ... we view [the contempt] portion of the statute as merely recognizing the court's inherent authority to enforce its lawful orders by contempt proceedings." *Shaunki*, 362 N.E.2d at

**2.** At the time *Corbridge* was decided, no statute existed which granted a court the power to hold an individual in contempt for failure to pay child support. *Corbridge*, 102 N.E.2d at 767. The power to hold a person in contempt for failure to

pay child support with respect to unemancipated children arose, not from statute, but from the court's inherent power to hold individuals in contempt for violation of its orders. *Id.*

154. The effect of the supreme court's holding in *Shaunki* is to say that IND. CODE § 31–1–11.5–17(c) does not in any way expand a court's contempt power beyond that which existed prior to its enactment.[3]  Accordingly, we hold that IND. CODE § 31–1–11.5–17(c) (recodified at IND. CODE § 31–16–12–1 pursuant to 1997 Ind. Acts, P.L. 1) does not affect our supreme court's *Corbridge* decision.

Here, all of the children covered by the 1985 support order were emancipated prior to Jenkins' request that Weybright be held in contempt for failure to pay her child support arrearage.[4]  Thus, in accordance with *Corbridge*, we hold that the trial court did not have the authority to hold Weybright in contempt for her child support arrearages.

## II.

### *Modification of Child Support Order*

The trial court modified the September 3, 1985 child support order both by increasing the amount of weekly support owed by Weybright and by requiring Weybright to pay a portion of C.J. educational expenses.  Weybright contends, and Jenkins concedes, that the trial court erred because C.J. had reached the age of twenty-one prior to Jenkins' filing of his petition for modification.

■ Unless a child is incapacitated or has been previously emancipated, the duty to support a child ends when the child reaches the age of twenty-one.  IND. CODE § 31–1–11.5–12(e) (Supp.1996) (recodified at IND. CODE § 31–16–6–6 pursuant to 1997 Ind. Acts, P.L. 1); *Beckler v. Hart*, 660 N.E.2d 1387, 1389 (Ind.Ct.App.1996).  Thus, it was error for the trial court to modify its weekly support award since Weybright no longer

had a duty to provide such support once C.J. reached the age of twenty-one.

■ Too, in *Donegan v. Donegan*, 605 N.E.2d 132 (Ind.1992), our supreme court held that "a trial court may not first make an order for educational needs when the petition seeking such relief is filed after the child's emancipation." *Id.* at 134.  Since C.J. was twenty-one prior to Jenkins' filing of his petition, the trial court's award of educational expenses was error.

## III.

### *Child Support Arrearage*

As part of its calculation of the amount of Weybright's child support arrearage, the trial court entered a finding that Weybright failed to pay child support from on or about September 7, 1993 until October 7, 1996.  Weybright's duty to pay child support ended when the youngest child covered by the support order reached the age of twenty-one.  IND. CODE § 31–1–11.5–12(e) (recodified at IND. CODE § 31–16–6–6 pursuant to 1997 Ind. Acts, P.L. 1); *Beckler v. Hart*, 660 N.E.2d 1387, 1389 (Ind.Ct.App.1996).  Since C.J. was born on December 22, 1974, Weybright's duty to provide weekly support ended on December 22, 1995.  Thus, it was error for the court to award Jenkins child support for any period beyond December 22, 1995.

## IV.

### *Conclusion*

We reverse the trial court's modification of its 1985 support order.  We reverse the trial court's findings insofar as they hold Weybright in contempt for failing to pay her child

---

**3.** When *Shaunki* was decided, the language of IND. CODE § 31–1–11.5–17 was slightly different than it is today.  In 1977, the statute read: " ... terms of the [divorce] decree may be enforced by all remedies available for enforcement of a judgment including but not limited to contempt...." *Shaunki*, 362 N.E.2d at 154, (quoting IND. CODE § 31–1–11.5–17(a) (1971)).  The current version of the statute reads: "Notwithstanding any other law, all orders and awards contained in the dissolution decree may be enforced by: (1) contempt...." IND. CODE § 31–1–11.5–17(c) (1993) (recodified at IND. CODE § 31–16–12–1 pursuant to 1997 Ind. Acts, P.L.

1).  We do not believe that this language modification affects the vitality of *Shaunki*.

**4.** In his pleadings, Jenkins contended that his youngest son, C.J., remained unemancipated.  However, at the time of Jenkins' filing, C.J. had reached twenty-one years of age.  Unless a child is incapacitated or has been previously emancipated, the child is emancipated when he reaches the age of twenty-one.  IND. CODE § 31–1–11.5–12(e) (Supp.1996) (recodified at IND CODE § 31–16–6–6 pursuant to 1997 Ind. Acts, P.L. 1).

support arrearage. We remand this case for recalculation of the amount of Weybright's child support arrearage, so that this amount may then be entered as a judgment against her. Finally, we affirm the trial court's award of Jenkins' reasonable attorney's fees. IND. CODE § 31–1–11.5–16 (1993) (recodified at IND. CODE § 31–16–11–1 pursuant to 1997 Ind. Acts, P.L. 1) (allows the court to order the payment of reasonable attorney's fees incurred in maintaining or defending a proceeding related to the payment of child support).

Affirmed in part, reversed in part, and remanded.

GARRARD and BARTEAU, JJ., concur.