**In re the PATERNITY OF L.A. and C.A., by next friend Sheree EPPINGER, Mother and In re the Paternity of L.S.A., by next friend Oralee Lacy, Mother, Appellant–Petitioner,**

v.

**Cedric ADAMS, Father, Appellee– Respondent.**

No. 71A03–0310–CV–394.

Court of Appeals of Indiana.

Feb. 26, 2004.

---

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorney for Appellant.

## OPINION

MATHIAS, Judge.

The St. Joseph County Prosecutor's Office filed an information for rule to show cause why Cedric Adams ("Adams") should not be held in contempt for his failure to pay his child support arrearage. After holding a hearing and determining that Adams' children were emancipated, the St. Joseph Probate Court discharged the rule to show cause finding that the use of contempt remedies against Adams would violate Article One, Section Twenty–Two of the Indiana Constitution. The State appeals and argues that contempt is an available remedy to enforce a child support arrearage order after the child is emancipated. We conclude that the use of contempt to enforce an order to pay child support arrearage after the child is emancipated is prohibited by Article One, Section Twenty–Two of the Indiana Constitution, and affirm the trial court in all respects.

### Facts and Procedural History

Adams is the father of L.A. and C.A., born to Adams and Sheree Eppinger. Adams' paternity of L.A. was established on October 10, 1971, and beginning on April 5, 1975, he was ordered to pay child support in the amount of $12.50 per week. His paternity of C.A. was established on September 19, 1973 and he was ordered to pay child support in the amount of $9 per week. Following the determinations of pa-

ternity in those proceedings, the cases were consolidated.

After Adams' paternity of L.A. and C.A. was established and the support orders were entered, various efforts were made to enforce Adams' child support obligations via contempt proceedings. On October 12, 2001, the State initiated proceedings to determine Adams' child support arrearage. On December 12, 2001, the trial court found that Adams' total child support arrearage for L.A. and C.A. was $16,801.64 and entered a judgment against him in that amount. Adams was ordered to reduce that arrearage by making payments of $45 per week.

Adams is also the father of L.S.A., born to Adams and Ora Lee Lacy. Adams' paternity of L.S.A. was established on January 16, 1980 and Adams was ordered to pay child support in the amount of $12.50 per week. When Adams failed to pay, efforts were made to enforce Adams child support obligation to L.S.A. via contempt proceedings. On October 16, 2001, the State initiated proceedings to determine his child support arrearage. On December 21, 2001, the trial court determined that his total child support arrearage for L.S.A. was $10,147.73. Adams was eventually ordered to pay that arrearage at a rate of $20 per week.

After Adams failed to pay the arrearage, on May 1, 2003, the St. Joseph Prosecutor's Office filed an information for rule to show cause against Adams in both paternity actions. A show cause hearing was held on June 25, 2003. On that date, the trial court entered a judgment against Adams in the amount of $16,511.78, which represented the amount of arrearage owed for child support of L.A. and C.A. The trial court also entered a judgment against Adams in the amount of $9,718.09, which represented the amount of arrearage owed for child support of L.S.A. The trial court

then determined that L.A., C.A., and L.S.A. were emancipated. Consequently, the trial court concluded that the use of contempt remedies against Adams would violate Article One, Section Twenty–Two of the Indiana Constitution. The trial court then discharged the rule to show cause issued against Adams in both paternity proceedings.

On June 30, 2003, the trial court issued written findings of fact and conclusions of law in each cause and found that

> Once a child is emancipated and the "natural duty" of the parents to provide for the maintenance of the child no longer exists, whether a request for relief under IC 31–16–12–6 is prosecuted by a "trustee" collecting child support or the trustee's assignee, the use of contempt remedies such as attachment and imprisonment to enforce a child support arrearage would violate of [sic] *Article 1, § 22* of the *Indiana Constitution* which prohibits "imprisonment for debt, except in the case of fraud."

Appellant's App. pp. 24, 85. The State then filed motions to correct error in both paternity proceedings, which were denied. The State filed a notice of appeal in both proceedings and also filed a motion to consolidate the appeals. The State's motion to consolidate was granted on October 6, 2003. Adams has not filed a brief in this appeal.

### Discussion and Decision

■ Our courts have long observed that a parent's obligation to provide support for a child "is founded in *nature*, not in contract." *Pettit v. Pettit*, 626 N.E.2d 444 (Ind.1993) (quoting *Lower v. Wallick*, 25 Ind. 68, 73 (1865)) (emphasis in original). Further, "child support obligations arise out of a natural duty of the parent and not from a debt of the obligor." *Id.* Consequently, the proscription against imprison-

ment for debt in Article One, Section Twenty–Two in the Indiana Constitution "does not prevent the use of contempt to enforce child support obligations." *Id.* (citations omitted).

In *Corbridge v. Corbridge,* 230 Ind. 201, 205, 102 N.E.2d 764, 766 (1952), our supreme court addressed the issue of whether contempt proceedings may be used to enforce payment of past due child support after the child is emancipated. In resolving the issue, the court initially acknowledged its prior decision in *Stonehill v. Stonehill,* 146 Ind. 445, 45 N.E. 600 (1896), in which the court held that imprisonment for failing to comply with a court order to pay child support is not imprisonment for debt within the meaning of the constitution. *Corbridge,* 230 Ind. at 207, 102 N.E.2d at 767; *Stonehill,* 146 Ind. at 447, 45 N.E. at 601. The court explained that "[t]he extraordinary remedy of attachment for a civil contempt of court is available, not for the protection of the one having custody of the child, but for the benefit of the child, so that it may not want for necessities during the period of its minority." *Corbridge,* 230 Ind. at 207, 102 N.E.2d at 767. The court then concluded that "[w]hen the child reaches its majority the purpose and justification for the extraordinary remedy cease, and the court has no right to coerce the back payments of support by imprisonment."[1] *Id.* Our court has consistently followed this hold-

ing.[2] *See Jenkins v. Jenkins,* 687 N.E.2d 256, 259 (Ind.Ct.App.1997), *trans. denied;* *Connell v. Connell,* 583 N.E.2d 791, 793–94 (Ind.Ct.App.1991); *Richardson v. Lake County Dep't of Pub. Welfare,* 439 N.E.2d 722, 724 (Ind.Ct.App.1982).

In *Pettit,* our supreme court held that an order to pay accrued child support arrearage or a money judgment against a delinquent parent for past due child support is enforceable by contempt. 626 N.E.2d at 446–47. However, the court limited its holding to unemancipated children and stated:

> We view such orders and judgments, *at least as they relate to child support payments in respect of unemancipated children,* as natural extensions of the court's efforts to assure that parents live up to their duties to their children. As such, the nature of a parent's underlying obligations remain unchanged and it is unduly formalistic and contrary to sound public policy to consider the entry of such an order or judgment as somehow changing the obligation in such a way as to make contempt unavailable to assist in its enforcement.

*Id.* at 446 (emphasis added). In a footnote, the court acknowledged its previous decision in *Corbridge* and stated, "[t]he issue of emancipation is not before us in the instant case and so we render no opin-

---

1. The court also stated that "[t]he remedy of attachment is for the benefit of the child and not its trustee under the order." *Id.* at 209, 102 N.E.2d at 768 (citing *Brown v. Brown,* 205 Ind. 664, 668, 187 N.E. 836, 837–38 (1933)).

2. In its brief, the State argues that the *Corbridge* holding does not derive from our constitution's prohibition against imprisonment for debt because it did not cite to Article One, Section Twenty–Two. We disagree. In reaching its conclusion, the court relied on previous decisions concluding that where un-

paid installments of child support have accrued, the delinquent parent becomes a debtor to the custodial parent for the total amount of the arrearage. *Corbridge,* 230 Ind. at 206, 102 N.E.2d at 766–67. Further, the court discussed the *Stonehill* decision, which addressed the constitutional prohibition against imprisonment for debt and imprisonment for failure to comply with a child support order. *Id.* at 206–07, 102 N.E.2d at 767. Given its analysis of the issue, we can only logically conclude that the *Corbridge* court reached its decision on constitutional grounds.

ion as to the availability of contempt to enforce child support delinquencies in respect of emancipated children." *Id.* at 446 n. 3.

In 1997, our court addressed a challenge to our supreme court's *Corbridge* decision. In *Jenkins,* the Appellee argued that the *Corbridge* holding was superseded by the General Assembly's enactment of Indiana Code section 31–16–12–1,[3] which provides that all orders and awards contained in a divorce decree may be enforced by contempt. *Jenkins,* 687 N.E.2d at 258. We rejected the Appellee's argument and concluded that section 31–16–12–1 did not "in any way expand a court's contempt power beyond that which existed prior to its enactment," and therefore, "does not affect our supreme court's *Corbridge* decision." *Id.* at 259 (citing *State ex rel. Shaunki v. Endsley,* 266 Ind. 267, 269, 362 N.E.2d 153, 154 (1977)).

In 2002, the General Assembly amended Indiana Code section 31–16–12–1 through Public Law 39–2002 and added the following emphasized language:

> Notwithstanding any other law, all orders and awards contained in a child support decree *or an order directing a person to pay a child, support arrearage* may be enforced by:
>
> (1) contempt, including the provisions under section 6 of this chapter;
>
> (2) assignment of wages or other income; or
>
> (3) any other remedies available for the enforcement of a court order; except as otherwise provided by IC 31–16–2 through IC 31–16–11 or this chapter.

Ind.Code § 31–16–12–1 (1998 & Supp. 2003) (emphasis added). Further in Public Law 39–2002, the General Assembly expressed its intention "to make contempt and all other remedies for the enforcement of a child support order available to assist in the enforcement of a child support order regardless of whether the child for whom the child support was ordered is emancipated."

The State relies on the 2002 amendments to section 31–16–12–1 [4] in support of its argument that a trial court's contempt power extends to enforcement of arrearage orders even after the child is emancipated. The State asserts that "[t]o the extent that language is in derogation of common law that contempt cannot be used to enforce arrearage orders after emancipation, the legislature has spoken plainly and unequivocally to overrule common law." Br. of Appellant at 8. Further, the State contends that those amendments demonstrate that child support arrearage existing past a child's emancipation is not a debt or money judgment, but remains a natural duty of the parent, which may be enforced by contempt proceedings. *Id.* Finally, the State directs our attention to decisions from other jurisdictions that have determined that contempt is an appropriate means to enforce child support arrearage orders for emancipated children. Br. of Appellant at 9–12; *See e.g. Davenport v. Hood,* 814 So.2d 268, 275 (Ala.Civ. App.2000); *Gibson v. Bennett,* 561 So.2d 565, 569 (Fla.1990); *Cramer v. Petrie,* 70 Ohio St.3d 131, 637 N.E.2d 882, 886–87 (1994); *Daly v. Snyder,* 117 Wash.App. 602, 72 P.3d 780, 783 (2003). *But see Fox v. Fox,* 56 Ill.App.3d 446, 14 Ill.Dec. 201,

---

**3.** *Formerly* Ind.Code § 31–1–11.5–17(c).

**4.** The State also directs our attention to the 2002 amendment of Indiana Code section 31–16–12–3, the section addressing child support arrearages, which provides that orders for

child support arrearage are "enforceable to the same extent as an order or award in a child support decree." Ind.Code § 31–16–12–3 (1998 & Supp.2003).

371 N.E.2d 1254, 1256 (1978); *Phillips v. Hedges,* 66 P.3d 364, 367 n. 6 (Okla.2002) (citing *Reynolds v. Reynolds,* 192 Okla. 564, 137 P.2d 914, 916–17 (1943)).

It is in the best interests of all citizens of Indiana that parents meet their obligations to support their children. A parent who fails to pay child support has an obligation to that child that remains unfulfilled, regardless of whether the child is emancipated or not. As our General Assembly has recognized, courts must be provided with appropriate tools to enforce their child support orders so as not to undermine the public's confidence in our judiciary. Our courts also have a compelling interest in ensuring that their orders are not ignored with impunity.

While we recognize the importance of providing appropriate tools to enforce child support orders, so too do we recognize that these enforcement tools must be constitutional. Our supreme court's holding in *Corbridge,* contrary to the State's arguments, derives from our constitution's prohibition against imprisonment for debt. Therefore, despite the 2002 amendment to Indiana Code section 31–16–12–1, we must conclude that the use of contempt to enforce an order for child support arrearage after a child is emancipated is prohibited by Article One, Section Twenty–Two of the Indiana Constitution under the reasoning set forth in *Corbridge.*

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.