Allen Francis FOLEY, Appellant–Respondent,

v.

Sharon Lee MANNOR, Appellee–Petitioner.

No. 20A05–0509–CV–509.

Court of Appeals of Indiana.

March 17, 2006.

---

Foley challenges [1] the trial court's exercise of jurisdiction over this case, as well as the order directing him to pay attorney's fees in the amount of $400 to Sharon's counsel. Allen also argues that the trial court erroneously ordered a body attachment against him, as well as the amount of the bond that the trial court had set.

We conclude that the trial court had jurisdiction over this matter, and that the award of $400 in attorneys' fees to Sharon was proper. However, we note that the issuance of a body attachment was improper in these circumstances. Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Allen Francis Foley, Washburn, ME, Appellant Pro–Se.

Beverly S. Peters, Elkhart, for Appellee.

### OPINION

BAKER, Judge.

Appellant-respondent Allen Francis Foley (Allen) appeals the trial court's judgment representing a $12,000 child support arrearage in favor of his former wife, appellee-petitioner Sharon Lee Foley Mannor (Sharon). Specifically,

## FACTS

When the parties were married and living in Texas, they had one son, M.F., who was born in Dallas on August 9, 1978. Sharon and Allen divorced nearly one year later, and the dissolution decree issued by the Dallas County District Court on February 22, 1979, provided that Sharon was to have custody of M.F., and that Allen was to pay child support in the amount of $50 per week "until [M.F.] reached the age of 18 years or is otherwise emancipated." Appellee's App. p. 11.

---

1. We note that Allen has failed to comply with a number of requirements set forth in our Rules of Appellate Procedure. In particular, Appellate Rule 46(A)(4) provides that the appellant's brief "shall concisely and particularly describe each issue presented for review." Contrary to these requirements, Allen fails to do so, and it is difficult for us to discern the precise arguments that he advances. Moreover, his claims are not supported with citation to relevant authority, in contravention of Appellate Rule 46(8)(a)-(e). In *Owen v. State,* 269 Ind. 513, 518, 381 N.E.2d 1235, 1239 (1978), our Supreme Court noted that a pro se appellant proceeds at the same risk as any other party before this court, and that when a party elects to represent himself, there is no reason for us to indulge in any benevolent presumption on his behalf, or waive any rule for the orderly and proper conduct of his appeal. It was further held that the same standards apply to pro se appellants as to others, and alleged errors are waived if such rules are not complied with. *Id.* Put another way, pro se litigants are held to the same standards of civility and professional courtesy as admittees to the Indiana bar. *Boczar v. Meridian Street Found.,* 749 N.E.2d 87, 92 (Ind.Ct.App.2001). However, given our preference to resolve cases that come before us on their merits where possible, *see Sneed v. Assoc. Group Ins.,* 663 N.E.2d 789, 797 (Ind.Ct. App.1996), we proceed to decide this appeal.

Shortly after the dissolution decree was entered, Allen apparently moved to Indiana. On January 2, 1980, Sharon filed a complaint in the Elkhart Superior Court (trial Court) pursuant to the Indiana Uniform Reciprocal Enforcement of Support Act (URESA)[2], in an effort to have the Texas child support order enforced. The trial court conducted a hearing on April 2, 1980, and Allen appeared by counsel. At no time during this hearing did counsel challenge the trial court's jurisdiction over this matter. Moreover, Allen admitted that he was an Indiana resident for a "brief period of time from 1979 to 1981." Appellant's Br. p. 10. Following the hearing, the trial court's order provided that Allen was to pay $50 per week for M.F.'s support beginning on May 15, 1980, and "the question of arrearage [was to] be determined upon further order of [the] court." *Id.*

Sharon filed a showing of noncompliance on January 8, 1981. However, the date set for the hearing was removed from the docket on July 24, 1981, because Allen had not been served with notice. Thereafter, on October 4, 1984, Sharon filed another verified showing of noncompliance, and the trial court set the matter for hearing on November 19, 1984. Following this hearing, which Allen did not attend,[3] the trial court found that Allen was approximately five years in arrears on his support payments. Hence, a judgment in the amount of $12,000 plus interest "at the legally acceptable rate" was entered against him. Appellant's App. p. 9. The trial court also considered this judgment to be a continu-

ing order of garnishment in the amount of $50 per week for M.F.'s support. Hence, the trial court ordered a monthly deduction for support and the arrearage on the judgment from Allen's military disability check. Sharon then moved to enforce the judgment by filing a verified motion in proceedings supplemental. Allen was ordered to appear on February 5, 1985.[4]

Sharon subsequently remarried, and, on December 7, 1990, she and her husband filed a petition in a Maricopa County, Arizona, trial court to adopt M.F. The Arizona court ultimately granted the adoption on August 7, 1991.[5] Thereafter, in August 2002, the trial court received a letter from Allen indicating—for the first time—that M.F. had been adopted and was twenty-five years old. Hence, Allen requested that the trial court terminate the garnishment of his military disability payments. In response, the trial court made the following entry:

> [The Court] directs the Clerk to hold all support payments in escrow pending further order. Court notes that the child's DOB is 8–9–78 per the Decree of Divorce. Court further notes that a judgment for child support arrears was entered on 11–19–84 in the amount of $12,000. Mr. Foley is directed to provide the current address for his ex-wife, Sharon Foley along with proof of the adoption. Upon receipt of the same, cause will be scheduled for hearing.

Appellant's App. p. 4.

On February 13, 2003, the trial court directed the Clerk to release the sums

---

**2.** The URESA provisions, Indiana Code section 31–2–1 *et seq.*, have since been repealed and have been recodified under the provisions of the Uniform Interstate Family Support Act (UIFSA). See Ind.Code § 31–18–1–1 *et seq.*

**3.** The Chronological Case Summary (CCS) indicates that Allen received service via certi-

fied mail on November 2; 1984. Appellee's App. p. 1.

**4.** It is not clear from the record whether this hearing ever occurred.

**5.** Foley consented to the adoption. Appellant's App. p. 37.

held in escrow and forward the payments to Sharon. After receiving additional information from Allen on March 14, 2005, the trial court determined that his child support obligation should be terminated because M.F. had been adopted or, in the alternative, because M.F. was emancipated. Thus, the trial court ordered any support payments held in escrow to be returned to Allen. The order also noted that Allen had not responded to the trial court's request for information for nearly two years. Finally, the trial court ordered any future funds that may have been collected from Allen to be returned to him.

However, on April 21, 2005, the trial court noted that it had received a letter from Sharon indicating that Allen was approximately $8600 in arrears in his child support payments. As a result, Allen was given twenty-one days to respond. The trial court then scheduled a hearing for June 27, 2005, on the arrearage matter. Allen reported to the trial court that he would not attend this hearing. The trial court noted that the only matter pending was an attempt by Sharon to collect the 1984 judgment on the arrearage. Moreover, the trial court indicated in the CCS on June 17, 2005, that Allen had filed a number of unsubstantiated allegations and irrelevant material in the case. Moreover, the trial court determined that appropriate sanctions would be imposed if Allen failed to appear at the hearing. Allen did not appear at the June 27, 2005, hearing, and the trial court ordered a body attachment with a bond set in the amount of $12,000. Sharon appeared by counsel, and the trial court awarded $400 in attorney's fees to her counsel. Allen now appeals.

*I. Jurisdictional Challenge*

■ Allen first claims that the trial court lacked jurisdiction in this case. Specifically, Allen maintains that the trial court was without authority to hear this matter because neither he, Sharon, nor M.F. were Indiana residents.

■ In addressing this contention, we first note that Indiana courts administering the provisions of URESA (now the Uniform Interstate Family Support Act, or "UIFSA") have subject matter jurisdiction to address matters of child support. *Beach v. Beach,* 642 N.E.2d 269, 273 (Ind. Ct.App.1994). With regard to matters involving personal jurisdiction, our Supreme Court has determined that the existence of personal jurisdiction over a defendant is a constitutional requirement to rendering a valid judgment. *Anthem Ins. Co. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1237 (Ind.2000). When a challenge to jurisdiction is made, the plaintiff must present evidence to show the existence of personal jurisdiction. The defendant bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence. *Id.*

In this case, the record shows that Allen appeared by counsel for the 1980 hearing. He has also acknowledged that he was an Indiana resident at the time. Appellee's Ex. A. Hence, Allen's argument that the trial court did not have jurisdiction over this matter fails. Even so, in the absence of Allen's admission that he was an Indiana resident, the provisions of UIFSA allow Indiana courts to exercise personal jurisdiction under certain circumstances. In relevant part, Indiana Code section 31–18–2–1 provides that:

In a proceeding to establish, enforce, or modify a support order or to determine paternity, an Indiana tribunal may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:

(1) *the individual is personally served with notice in Indiana;*

(2) *the individual submits to the jurisdiction of Indiana by:*

(a) *consent;*

(b) *entering an appearance,* except for the purpose of contesting jurisdiction; or

(c) filing a responsive document having the effect of waiving contest to personal jurisdiction.

(Emphasis added). Inasmuch as Allen's counsel appeared at the hearing on his behalf, and the issue of jurisdiction was not challenged, Allen's claim fails on this basis as well.

### II. Abuse of Discretion In Entering Judgment

█ Allen also seeks to attack the propriety of the judgment that was entered against him in 1984. In essence, Allen argues that the support order and judgment on the arrearage were erroneous.

First, we note that our review of the record indicates that in 2005, the trial court was simply reiterating the terms of the judgment that were set forth in the 1984 order. Appellee's App. p. 42–45. To be sure, the trial court specifically determined that "no further action is necessary in this cause other than a body attachment with an escrow bond in the amount of . . . $12,000 for his failure to appear." *Id.* Inasmuch as Allen never appealed the original order in a timely manner, he cannot now complain that the judgment was erroneous.

### III. Body Attachment and Award of Attorney's Fees

Allen next contends that the trial court's issuance of a body attachment and the award of attorneys fees to Sharon were improper. In essence, Allen is arguing that the trial court's actions amounted to an abuse of discretion.

### A. Body Attachment

█ We initially observe that a trial court may enforce a child support order by contempt. *See Pettit v. Pettit,* 626 N.E.2d 444, 447 (Ind.1993). It has also been held that an order to pay accrued child support arrearage or a money judgment against a delinquent parent for past due child support is enforceable by contempt. *Id.* at 446–47.

One contempt remedy is our body attachment statute which is set forth in Indiana Code section 34–47–4–2:

Sec. 2. (a) For the purpose of procuring personal jurisdiction over a person who has allegedly violated a court order or who is otherwise in contempt of court, the court may issue a writ of attachment of the body of the person.

(b) A writ of attachment issued under subsection (a) shall:

(1) be directed to a sheriff or assisting sheriff; and

(2) fix an amount of:

(A) bail, if the order that the person has allegedly violated does not concern a child support obligation; or

(B) *escrow, if the order that the person has allegedly violated concerns a child support obligation.*

. . .

(e) The escrow shall be:

(1) deposited with the clerk of the court;

(2) an amount:

(A) fixed by the court; and

(B) *not more than any delinquent child support allegedly owed by the person to another;* and

(3) *subject to a court ordered attachment for satisfaction of delin-*

*quent child support and interest under IC 31–14–12–1.*

(Emphasis added).

In examining these provisions, it appears that the plain language of the body attachment statute would permit a trial court to issue a writ of attachment in accordance with its power of contempt if an order that the person has allegedly violated concerns a child support obligation. *See Slagle v. Slagle,* 155 Ind.App. 304, 292 N.E.2d 624, 625–26 (1973) (observing that after the trial court determined that the father was guilty of contempt for failing to pay a child support arrearage, a body attachment was issued against the father until such time as he purged himself of contempt by paying the arrearage). As our Supreme Court observed in *Corbridge v. Corbridge,* 230 Ind. 201, 102 N.E.2d 764 (1952), public policy supports the use of a trial court's contempt power where there has been an appropriate order to pay child support. The reason is that the contempt remedy "is available, not for the protection of the one having custody of the child, but for the benefit of the child, so that it may not want for necessities during the period of its minority." *Id.* at 767.

We also note that a companion statute, Indiana Code section 31–16–12–1, provides that

*Notwithstanding any other law,* all orders and awards contained in a child support decree *or an order directing a person to pay a child support arrearage may be enforced by:* [6]

(1) *contempt,* including the provisions under section 6 of this chapter;

(2) assignment of wages or other income; *or*

(3) *any other remedies available for the enforcement of a court order;*

except as otherwise provided by IC 31–16–2 through IC 31–16–11 or this chapter.

(Emphases added). In essence, this statute provides that *all* orders and awards pertaining to child support matters may be enforced by contempt. *Jenkins v. Jenkins,* 687 N.E.2d 256, 259 (Ind.Ct.App. 1997), *trans. denied.* However, a panel of this court had the occasion to construe this statute along with a trial court's contempt powers in *Paternity of L.A. ex rel. Eppinger v. Adams,* 803 N.E.2d 1196, 1198 (Ind.Ct.App.2004), *trans. denied.* In *Eppinger,* the county prosecutor's office filed an information for rule to show cause why Adams should not be held in contempt for his failure to pay his child support arrearage. After determining that Adams's children were emancipated, the trial court discharged the rule to show cause, finding that the use of contempt remedies against Adams would violate Article One, Section Twenty–Two of the Indiana Constitution,[7] the provision that prohibits imprisonment for debt.

On appeal, we affirmed the trial court's judgment and observed that:

While we recognize the importance of providing appropriate tools to enforce child support orders, so too do we recognize that these enforcement tools must be constitutional. Our [S]upreme

---

**6.** The language regarding an order as to "a child support arrearage" was added by our legislature in 2002 through Public Law 39–2002.

**7.** Specifically, this provision states that "the privilege of the debtor to enjoy the necessary

comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted: *and there shall be no imprisonment for debt, except in case of fraud.*" (Emphasis added).

[C]ourt's holding in *Corbridge* ... derives from our constitutions's prohibition against imprisonment for debt. Therefore, despite the 2002 amendment to Indiana code section 31–16–12–1, *we must conclude that the use of contempt to enforce an order for child support arrearage after a child is emancipated is prohibited by Article One, Section Twenty–Two of the Indiana Constitution.*

(Emphasis added).

In this case, the record shows that Allen failed to comply with the Texas court's child support order for nearly five years. Appellee's App. p. 1. After Sharon had filed a number of verified showings of noncompliance, the trial court ultimately reduced the amount of arrearage to a judgment in the amount of $12,000 plus interest on November 19, 1984. *Id.* In light of Allen's continued failure to pay, the trial court set a hearing on the arrearage. Allen then indicated that he would not attend. *Id.* at 6. In response, the trial court issued a warning to Allen that "appropriate sanctions" would be ordered if he failed to appear at the June 27, 2005, arrearage hearing.[8] *Id.* Hence, when Allen did not appear, the trial court invoked its contempt power and issued the body attachment for Allen in the amount of the arrearage. *Id.* However, it was also established that Sharon and her subsequent husband petitioned to adopt M.F. in 1990, and an Arizona trial court granted the petition approximately eight months later. In 2002, Allen notified the trial court that M.F. had been adopted.

Once M.F. was adopted, Allen no longer had a continuing obligation to pay child support. Under these circumstances, we find the *Corbridge* court's reasoning applicable: "[w]hen the child reaches its majority the purpose and justification for the extraordinary remedy [of attachment] cease, and the court has no right to coerce the back payments of support by imprisonment." *Corbridge,* 230 Ind. at 207, 102 N.E.2d at 767. When applying the rules set forth in *Corbridge* and *Eppinger* to the circumstances here, we can only conclude that the remedy of attachment was not available to the trial court in light of M.F.'s adoption by Sharon and her subsequent husband. In essence, M.F.'s adoption can be likened to the instance where the child has become emancipated. Therefore, the justification for such an extraordinary remedy as an effort to collect back support from Allen no longer exists, and he cannot be subject to a body attachment for the arrearage. Therefore, notwithstanding the provisions of Indiana Code section 31–16–12–1, the issuance of the body attachment in these circumstances was error.[9]

## B. Attorneys' Fees

■■■ In addressing Allen's contention that the trial court's order directing him to pay Sharon's attorneys' fees was error, we note that in post-dissolution matters, the trial court may order a party to pay a reasonable amount for attorneys' fees. Ind.Code § 31–1–11.5–16(a). In awarding attorney fees, the trial court has broad discretion. *Meade v. Levett,* 671 N.E.2d 1172, 1179 (Ind.Ct.App.1996). We will reverse the trial court's decision if the award is clearly against the logic and effect of the facts and circumstances before

---

8. It is not abundantly clear from the record whether the trial court actually issued an order to appear for the June 27, 2005 hearing, or that a rule to show cause was issued.

9. As an aside, we note that Sharon still has remedies available to her that may enable her to collect the judgment from Allen such as proceedings supplemental to execution. *See* Indiana Trial Rule 69.

the court. *Id.* In assessing such fees, any misconduct on the part of one of the parties that directly results in the other party incurring additional fees may be taken into consideration. *Id.*

In this case, the trial court expressly stated in its order of June 17, 2005, that if Allen did not appear at the hearing, "appropriate sanctions will be ordered." Appellee's App. p. 6. The trial court also noted that Allen had filed many unsubstantiated allegations and irrelevant material. The trial court further observed that Allen had issued "threats" to the court clerk's office "and/or the court." *Id.* In our view, Allen's unsubstantiated allegations that he presented to the trial court, his refusal to abide by the trial court's rules, along with his offensive correspondence to the trial court, were all factors that led to the increase of Sharon's attorneys' fees. Hence, we cannot say that the trial court's order for Allen to pay a portion of those fees amounted to an abuse of discretion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

BAILEY, J., concurs.

NAJAM, J., concurs in result, with opinion.

NAJAM, Judge, concurring in result.

I fully concur with the majority that the issuance of the body attachment on these facts was error. But we do not need to reach the merits of any defense to the child support obligation. Foley was found in contempt for his failure to appear at a hearing on June 27, 2005, not for failing to pay the child support arrearage that had previously been reduced to a money judgment. Indiana 34–47–3–1 provides that an indirect contempt citation may issue against a person who willfully disobeys any process or any order lawfully issued. The record is devoid of any order directing Foley to appear at that hearing. And even if any of the CCS entries could be construed as an order to appear, the court never issued a rule to show cause. *See* Ind.Code § 34–47–3–5. Thus, there is no basis for a finding of contempt.

In all other respects, I concur.