## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2016, 6:06 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Andrea L. Ciobanu
Alex Beeman
Ciobanu Law, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael C. Feldhake,<br>*Appellant-Respondent,*<br><br>v.<br><br>Meryle Lowe (Feldhake),<br>*Appellee-Petitioner* | February 4, 2016<br><br>Court of Appeals Case No.<br>49A02-1509-DR-1332<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Michael Keele, Judge<br>The Honorable Victoria M. Ransberger, Magistrate<br><br>Trial Court Cause No.<br>49D07-1304-DR-15091 |

**Baker, Judge.**

[1] Michael Feldhake appeals the judgment of the trial court (1) finding that Meryle Lowe complied with the trial court's previous order to pay Feldhake $1,200 and (2) ordering Feldhake to pay $750 in attorney fees. Acknowledging that the evidence presented by Lowe regarding her payment appears to be quite dubious, we are nevertheless compelled to affirm the trial court's decision given our standard of review.

## Facts

[2] This is the second case before us arising from the dissolution of Feldhake and Lowe's marriage. The facts relating to the dissolution are laid out in our previous memorandum decision and we will not recount them here. *Feldhake v. Feldhake*, No. 49A04-1405-DR-250 (Ind. Ct. App. Feb. 25, 2015). Our previous decision involved Feldhake's challenge to various aspects of the trial court's division of property. We largely affirmed the trial court, but remanded for the limited purpose of determining whether Lowe had complied with a provisional order, which required her to pay Feldhake $600 a month to cover mortgage payments for the months of December 2013 and January 2014. *Id.* at 6.

[3] On March 6, 2015, the trial court issued an order on the remanded issues, ordering Lowe to either prove that she had already made the payments or pay Feldhake the $1,200 owed. The trial court gave Lowe forty-five days to comply with this order. On April 17, 2015, Lowe attempted to prove that she had made the payments by submitting a "Verified Notice of Partial Compliance with Order of Remanded Issues" to the trial court. Appellant's App. p. 21-22.

Attached to the notice were copies of checks for $600 each, which purported to cover amounts due in November and December 2013. However, the November 2013 payment had never been at issue and the notice, quite inexplicably, contained no documentation of, or even reference to, the January 2014 payment that was at issue. Feldhake was suspicious that the copies of the checks may have been forgeries, as he believed, mistakenly, that one of the checks had been cashed before it had been signed. He filed a response to Lowe's notice on April 22, 2015, arguing that Lowe had not complied with the trial court's order "and maybe committed fraud on the court." *Id.* at 30. On May 11, 2015, he filed a motion for Lowe to show cause as to why she should not be held in contempt.

[4] On July 23, 2015, the trial court held a summary hearing on all pending issues. As to whether Lowe had made the January payment, Lowe's counsel presented the only evidence on the issue, stating that Lowe's "testimony would be she made a cash payment around that time to [Feldhake's] friend Ricky to provide to [Feldhake]." Tr. p. 8. On July 30, 2015, the trial court denied Feldhake's contempt petition. The trial court held that Lowe had "demonstrated she satisfied her obligation to pay the mortgage payments" and that "the checks were not in fact fraudulent." Appellant's App. p. 56. It further found that Lowe "incurred attorney's fees to address this wrongful allegation" and ordered Feldhake to pay Lowe $750. *Id.* at 57. Feldhake now appeals.

# Discussion and Decision

[5] Although neither party to this case requested that the trial court make findings of fact before rendering its judgment, the trial court did so *sua sponte*. When a trial court makes findings on its own motion, the general judgment will control as to the issues upon which the court has not found and the specific findings will control as to the issues they cover. *In re Marriage of Snemis*, 575 N.E.2d 650, 653 (Ind. Ct. App. 1991). We will reverse the trial court's findings only if they are clearly erroneous and the general judgment will be affirmed if it can be sustained upon any legal theory supported by the evidence produced at trial. *Id.*

[6] The proceedings at issue here were conducted in summary fashion. Our Supreme Court has observed that

> [s]ummary proceedings function to efficiently resolve disputes by allowing parties and the court to forego the use of formal rules of procedure and evidence and instead allow the court to base its findings and conclusions upon the arguments of counsel and limited evidence. *Summary proceedings commonly take place when parties are not disputing essential facts*, but rather the legal outcome compelled by those facts.

*Bogner v. Bogner*, 29 N.E.3d 733, 739 (Ind. 2015) (emphasis added).

[7] In this case, the hearing was held to determine essentially one disputed fact—whether Lowe had made the January payment. As such, summary proceedings were plainly not ideal. However, it appears from the record that both parties agreed to summary proceedings and raised no objection. *See* tr. p. 5, 11-12. As both parties chose to forego the possible advantages of an evidentiary hearing,

any challenge to the nature of these proceedings has been waived. *Bogner*, 29 N.E.3d at 740.

[8]    Feldhake first argues that the trial court erred in finding that Lowe made the January payment. He argues that the November and December checks cannot possibly support an inference that a January payment was made. He further argues that counsel's statement that Lowe's "testimony would be she made a cash payment around that time to [Feldhake's] friend Ricky to provide to [Feldhake]," was "dismissed" by the trial court. Tr. p. 8; Appellant's Br. p. 15.

[9]    While we agree with Feldhake that the November and December checks cannot possibly be construed as evidence of a January payment, we cannot agree that Lowe's testimony regarding payment she made to Ricky was dismissed by the trial court. *See* tr. p. 8. Our own skepticism aside, this statement, if believed, would have provided the trial court a basis for finding that the January payment had been made. Though the veracity of this statement could have been, and certainly should have been, challenged in an evidentiary hearing, Feldhake chose to forego this opportunity. This Court cannot entertain requests to reweigh evidence from a paper record.

[10]   Feldhake next argues that the trial court erred in awarding Lowe $750 in attorney fees. Indiana Code section 31-15-10-1(a) grants the trial court authority to order a party to pay another party's reasonable attorney fees in a dissolution of marriage proceeding. The trial court has broad discretion in awarding attorney fees and we will reverse the award only upon an abuse of

discretion. *Foley v. Mannor*, 844 N.E.2d 494, 501-02 (Ind. Ct. App. 2006). "In assessing such fees, any misconduct on the part of one of the parties that directly results in the other party incurring additional fees may be taken into consideration." *Id.* at 502.

[11] Here, the trial court found that

> [Feldhake] has indicated to the court that [Lowe] "perpetrated a fraud upon the court" by submitting fraudulent copies of checks to the court. As [Lowe] demonstrated, the checks were not in fact fraudulent.
>
> [Lowe] incurred attorney's fees to address this wrongful allegation by [Feldhake], in addition to defending [Feldhake's] unsuccessful contempt petition.

Appellant's App. p. 56-57.

[12] Feldhake argues that the trial court misconstrued the nature of his contempt petition. He maintains that Lowe was in contempt for failing to comply with the trial court's order to prove that she had paid Feldhake within forty-five days of the trial court's order on remand. Feldhake acknowledges that he alleged that Lowe "maybe committed fraud on the court" by submitting fraudulent checks. *Id.* at 30. He contends, however, that the gravamen of his complaint was that Lowe had simply not abided by the court's order by failing to even attempt to prove that the January payment had been made. Feldhake believes that his speculation as to possible fraudulent checks was not central to his claim.

[13] However, the trial court acknowledged that Feldhake's allegation of check forgery was not central to his claim, but nevertheless noted that Lowe had incurred fees to address "this wrongful allegation" *in addition to* defending the contempt petition generally. *Id.* at 57. This is true, as Lowe had to take additional steps to prove that these checks were authentic. Consequently, the trial court was within its discretion to award Lowe attorney fees insofar as they related to defending this allegation. And Feldhake does not dispute the amount awarded.

[14] We close by noting that we are sympathetic to Feldhake's argument. Assuming Lowe was not intentionally trying to mislead the trial court, her attempt to prove compliance with its order by sending copies of checks for the incorrect months was still unacceptable by any measure. However, Feldhake's decision to agree to summary proceedings invited the trial court to accept unchallenged evidence. While this evidence may appear slim to us, it is nevertheless sufficient if it is to be believed. As we have not had the benefit of observing the parties, we can form no opinion as to their credibility, and cannot conclude that the judgment was error.

[15] The judgment of the trial court is affirmed.

Bradford, J., and Pyle, J., concur.