BOEHM, Justice,
concurring in part and dissenting in part.
I agree with the majority that under this Court’s precedent in PicadiUy, Inc. v. Raikos, 582 N.E.2d 338 (Ind.1991), Perkins’s legal malpractice claims against his attorney Jerry L. Susong are not assignable. I also agree with the majority’s brief statement that because proceedings supplemental are “merely an extension of the underlying action, the merits of any assigned claim should not be tried in this limited forum.”
I dissent in part because I do not agree with .the majority that State .Farm should have been allowed to intervene in the proceeding supplemental. The Court of Appeals concluded that State Farm had a right to intervene pursuant to Indiana Trial Rule -24(A). The majority does not directly address intervention as of right but finds permissive intervention proper. I do not agree that State Farm should have been permitted to intervene pursuant to Indiana Trial Rule 24(B). I also disagree with the majority’s view that the trial court erred in ordering assignment of Perkins’s claims against State Farm.
I. Jurisdiction of Proceedings Supplemental over the Merits of an Assigned Claim
I agree with the majority that a proceeding supplemental is not the proper forum to resolve the merits of an assigned claim. The majority did not advance its reasoning supporting this conclusion. I take this opportunity to do so because I believe some of the reasons for this conclu *1029 sion are also relevant to the propriety of permitting State Farm to intervene in this case.
The resolution of the merits of an assigned claim in proceedings supplemental is inconsistent with the statutory scheme governing proceedings supplemental. Before the adoption of the Indiana Trial Rules in 1970, it was well established that proceedings supplemental were filed as new and independent civil actions. Baker v. State ex rel. Mills, 109 Ind. 47, 52, 9 N.E.'711, 713 (1887); Burkett v. Holeman, 104 Ind. 6, 11-12, 3 N.E. 406, 409-10 (1885). Indiana Trial Rule 69(E) effected a substantial change in the law. The Civil Code Study Commission’s comment on Trial Rule 69(E) reads in pertinent part:
Rule 69(E) retains the basic statutes upon [proceedings supplemental] but introduces simpler pleadings and procedure. However, this rule makes some significant changes. For one thing, the court rendering judgment retains venue or jurisdiction over proceedings supplemental, contrary to prior law which fixed venue at the defendant’s residence. Relief is allowed by motion, and the order to appear in proceedings supplemental is granted ex parte without hearing, thus clarifying present procedures. Necessarily, this means that the remedy is merely a continuation of the original action both in name and in cause number.
Indiana Rules of Civil Procedure: Proposed Final Draft 262 (1968). In the years since Trial Rule 69(E) was adopted, Indiana courts have routinely held that proceedings supplemental are merely extensions of the underlying action, not separate and independent actions. See, e.g., Arend v. Etsler, 737 N.E.2d 1173, 1175 (Ind.Ct.App.2000); Citizens Nat’l Bank v. Harvey, 167 Ind.App. 582, 589, 339 N.E.2d 604, 608 (1976). Consequently, proceedings supplemental serve the limited purpose of determining whether an asset is in the judgment debtor’s possession or subject to the judgment debtor’s control and can be attached to satisfy the judgment. Kirk v. Monroe County Tire, 585 N.E.2d 1366,1368 (Ind.Ct.App.1992).
Proceedings supplemental to execution have historically been summary in nature and have facilitated the timely collection of unsatisfied judgments. Lewis v. Rex Metal Craft, Inc., 831 N.E.2d 812, 820 (Ind.Ct. App.2005). But proceedings supplemental have refused to serve as forums for hearing new and independent causes of action that the debtor may have against third parties. See First Bank of Whiting v. Sisters of Mercy Health Corp., 545 N.E.2d 1134, 1141 (Ind.Ct.App.1989), trans. denied (concluding that a proceeding supplemental is not an appropriate forum to try a judgment creditor’s cause of action against a garnishee-defendant). Thus, once assignments of actions were made, there was nothing left for the proceedings supplemental court to do. Trial Rule 69(E) authorizes the court in proceedings supplemental to “apply” property to the judgment as provided in the statute. The statute authorizes the proceedings supplemental .court to order any non-exempt “property, income, or profits of the judgment debtor ... to be applied to the satisfaction of the judgment.” Ind.Code § 34-55-8-7(a) (2004). It does not purport to confer jurisdiction over the merits of the assigned claim.
There are also practical reasons why the merits of an assigned claim should not be tried in proceedings supplemental. There is no jury in a proceeding supplemental, and one of the parties may be entitled to a jury on the merits of the claim. In this case, the merits of the judgment debtor’s claim against- State Farm are at least somewhat related to the claim that resulted in the judgment that the Estate seeks *1030 to execute. That is not always the case. For example, resolution of an unliquidated tort-claim may entail a variety of issues inappropriate for the court that created the judgment. In addition, the claim may turn on witnesses or other evidence that are difficult or impossible to secure in the forum giving rise to the judgment. Perhaps more importantly, Trial Rule 69(E) contemplates expedited procedures that may be unfair to resolution of the merits on an unliquidated claim. To resolve these inherent tensions, either the claim will be tried in a truncated way or the proceeding supplemental will be converted into a full-blown trial. There is no reason to choose either of these undesirable alternatives. Requiring the matter to be tried as a freestanding independent lawsuit avoids both.
II. Intervention
In a footnote the majority states that State Farm should have been permitted to intervene pursuant to Trial Rule 24(B). The majority does not directly address the holding of the Court of Appeals that State Farm was entitled to intervene as of right. For the following reasons, I conclude that intervention, whether of right or permissive, was improper, and the trial court properly denied State Farm’s motion.
Motions to intervene as a matter of right are governed by Trial Rule'24(A). Persons seeking to intervene as a matter of right pursuant to Trial Rule 24(A) “must show (1) that they have an interest in the subject of the action; (2) that the disposition of the action may as a practical matter impede their protection of that interest; and (3) that representation of their interest by existing parties is- inadequate.” Herdrich Petroleum Corp. v. Radford, 773 N.E.2d 319, 324 (Ind.Ct.App.2002), trans. denied. Whether a particular factual situation satisfies this three-part test is within the trial court’s discretion. Id.
If the merits of Perkins’s assigned claim against State Farm were properly before the proceedings supplemental court, presumably State Farm would be entitled to intervene. However, the “subject matter of the action” in the proceedings supplemental was limited to the question of whether to assign Perkins’s potential claim against State Farm. That subject matter did not include an evaluation of the merits of the assigned claim. State Farm claims an interest in the question of who, as between the Estate and Perkins, had the ■right to bring a bad faith claim. In support of this argument, State Farm cites the statement of Perkins’s attorney who states that Perkins knew of no evidence that would support a bad faith claim against State Farm:
“I was just saying that I would not have Mr. Perkins voluntarily agree to an assignment to bring in a third party on the basis that there may be some reason that they owe something that we have no objection to. They defended him. We discussed that considerably as far as they defended him far beyond and they had a suit separate which the court here can take notice of, as far as bringing them into the suit. They defended it all the way through. I personally would not be party to opening the insurance company up to defending another case that their own insured does not wish to bring, without some showing of fact that they did do something. Because I’m not aware of any bad faith dealing on their parts.... But personally on his behalf I would not advise him nor have him voluntarily grant an assignment that would open up a third party to a law suit.” [Transcript 9/16/02 Hearing pp 7-8].
From this statement, State Farm infers that Perkins did not intend to bring a lawsuit for bad faith against State Farm. State Farm reasons that it was interested *1031 in the assignability of Perkins’s claim because if there were no assignment the only party entitled to bring suit (Perkins) would not have sued. I do not believe that State Farm has stated a cognizable interest under Trial Rule 24(A). In my view, State Farm has merely alleged an interest in not being sued. Standing alone this is insufficient to establish that a would-be-interve-nor is “interested” in the subject matter of an action.[12] In simple terms, a party cannot sue just to prevent the opponent from asserting a claim; the defense of the claim is the means to assert that interest. And once the issue is in court in one forum, a declaratory judgment in another court should be denied on equitable principles.
The authority cited by State Farm does not dictate a contrary result. Indiana courts have recognized that insurers have a right to intervene in tort actions between the insured and an underinsured motorist. See, e.g., Westfield Ins. Co. v. Axsom, 684 N.E.2d 241, 244 (Ind.Ct.App.1997); Vernon Fire & Cas. Ins. Co. v. Matney, 170 Ind.App. 45, 50-51, 351 N.E.2d 60, 64 (1976). These decisions have recognized that insurers have a cognizable interest warranting intervention in the tort actions between the insured and an underinsured tortfeasor because the underinsured motorist’s liability to the insured is “inseparably tied to the legal liability” of the insurer in subsequent contract litigation with the insured. Axsom, 684 N.E.2d at 244. In contrast, the question of whether to assign Perkins’s bad faith claim does not involve any determination that State Farm is liable on this claim.
State Farm also does not satisfy the other two requirements of intervention as of right. Trial Rule '24(A) provides for intervention if “the disposition of the action may as a practical matter impair or impede [the would-be-intervenor’s] ability to protect his interest.” State Farm argues that if it is not allowed to intervene and challenge the assignment in the Indiana proceedings supplemental, it would be barred by estoppel principles from challenging the validity of the assignment in the Illinois litigation. According to State Farm, if it objected to the assignment for the first time in the Illinois bad faith litigation, the Illinois court would deem those objections a collateral attack on a final Indiana judgment and hold that State Farm waived its right to object by not intervening in the proceedings supplemental to set the assignment aside. I believe this argument is without merit.
Under the Full Faith and Credit Clause of the Constitution of the United States, a judgment of an Indiana court is entitled to the same effect in another state that it would be given in Indiana. See, e.g., Baker by Thomas v. CMC, 522 U.S. 222, 233, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (“A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.”); Tom-Wat, Inc. v. Fink, 741 N.E.2d 343, 347 (Ind.2001) (“Under the Full Faith and Credit Clause of the Constitution of the United States, the *1032 courts of this state are obligated to enforce a judgment of the courts of a sister state.”). A judgment is binding in favor of or against parties to the proceedings in which it is rendered and their privies. Montana v. United States, 440 U.S. 147, 153-54, .99 S.Ct. 970, 59 L.Ed.2d 210 (1979). It is also .well settled that, with certain exceptions, the doctrine of res judicata. generally does nothing to affect the rights of those who are neither parties nor in privity with a party.. United States v. Clark County, Ind., 113 F.Supp.2d 1286, 1291 (S,D.Ind.2000). As I see it, State Farm was not a proper party to the proceedings supplemental. Nor is State Farm in privity with Perkins as to any issue of Perkins’s claim against State Farm. Accordingly, State Farm should not be estopped from raising the validity of an assigned claim in the Illinois litigation.
State Farm also argues -that its interests were not adequately represented by Perkins. This is true, but if State Farm is denied intervention in this proceeding, State Farm would remain free to raise whatever defenses it has to the pending claim in Illinois. These include its contention that the claim has no merit and that the claim is not assignable. In sum, the trial court properly rejected State Farm’s motion to intervene under Trial Rule 24(A)..
Much of the same reasoning supports the trial court’s decision to deny permissive intervention under Trial Rule 24(B). Trial Rule 24(B) explicitly states that “[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.” We therefore review a trial court’s denial of a motion for permissive’ intervention for abuse of discretion. Herdrich, 773 N.E.2d at 324. I believe the trial court was not only within its discretion but was correct.
The text of Trial Rule 24 reveals that it does not contemplate intervention in proceedings supplemental, whether as of right or permissive, except by a potential garnishee. Indiana Trial Rule 24(C) applies to intervention as of right and permissive intervention. It states -
A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and set forth or include by reference the claim, defense or matter for which intervention is sought. Intervention after trial or after judgment for purposes of a motion under Rule 50, 59, or 60, or an appeal may be allowed upon motion.
The rule is specific as to the post-judgment circumstances under which a new party can intervene. Each of the listed trial rules (50, 59, and 60) contemplates a motion attacking the merits of the original decision, and none deals with addressing collateral issues. Specifically, Trial Rule 24(C) makes no mention of Trial Rule 69, which governs proceedings supplemental. Allowing intervention in proceedings supplemental would allow third parties to inject new issues into a forum designed to afford only a summary procedure. The merits of such a claim should be given a full hearing, including any rights to demand a jury or change of judge, and the other incidents of a trial of any newly presented issue. The reasons identified in Part I to deny jurisdiction over the merits of the assigned-claim equally dictate denial of intervention to litigate the assignability in proceedings supplemental.
Because I believe the trial court was correct in denying State Farm’s motion to intervene, 1 must address an additional argument raised by State Farm but not addressed by the majority. State Farm argues that pursuant to subsection (4) of Trial Rule 69(E) it was entitled to notice *1033 and.an opportunity to be heard in the proceedings supplemental. Subsection (4) provides that proceedings supplemental to execution may be enforced by verified motion or with affidavits alleging:
[I]f any person is named as garnishee, that garnishee has or will have specified or unspecified nonexempt property of, or an obligation owing to the judgment debtor subject to execution or proceedings supplemental to execution, and that the garnishee be ordered to appear and answer concerning the same or answer interrogatories submitted with the motion.
The rule goes on to provide that persons who are named by the judgment creditor as garnishees are entitled to notice and an opportunity to be heard in the proceedings supplemental. The Estate did not name State Farm as a garnishee in its motion initiating the proceedings supplemental. State Farm claims this violated its right to notice and an opportunity to be heard under Trial Rule 69(E) because it is a “garnishee.” State Farm’s argument focuses on the “will have ... an obligation owing” language in subsection (4) of Trial Rule 69(E). According to State Farm, in attempting to reach State Farm through assignment, the Estate assumed that State Farm had some obligation to Perkins. See T.R. 69(E) (stating that a garnishee is one who has or will have “an obligation owing the judgment debtor”). State Farm concludes that because the Estate assumed State Farm would owe an obligation to Perkins for bad faith, the Estate was required to name State Farm as a garnishee in the Estate’s motion initiating a proceeding supplemental to execution.
It is true that the Estate claims State Farm has an obligation to Perkins. However, as explained above, if State Farm has a valid obligation to Perkins, it is not an obligation that is “subject to execution in a proceeding supplemental” because it cannot be reduced to judgment in a proceeding supplemental. The only matter before the proceeding supplemental court was the Estate’s effort to reach property in Perkins’s possession, not the resolution of Perkins’s claims against State Farm. Perkins was clearly the “owner” of any claim that may exist against State Farm. Because the merits of Perkins’s claim cannot be tried in a proceeding supplemental, the only property the Estate can reach in the proceeding supplemental is the contingent and unliquidated tort action against State Farm. This potential tort action was Perkins’s property, but it is not an obligation State Farm owed Perkins.[13] Accordingly, I believe that State Farm was not a garnishee and was not entitled under Trial Rule 69(E) to notice and an opportunity to be heard in the proceeding supplemental.
III. Involuntary Assignment of Perkins’s Claim Against State Farm
The majority holds that the “trial court’s order requiring Perkins’s forced assignment of his chose in action against State Farm was error.” The majority seems to base this holding on (1) the fact that the assignment was involuntary and (2) that the assignment violated the direct action rule. In my view, it is of no consequence *1034 that the assignment was over Perkins’s objection. Also, I do not believe that this assignment implicates the direct action rule.
A. Involuntary Assignment
The majority states that it was error for the trial court to force Perkins to assign his claim against State Farm but that Perkins could voluntarily assign this claim. For the following reasons, I disagree-.'
Trial Rule 69(E) allows the proceedings supplemental court to apply the debtor’s nonexempt property to satisfaction of a judgment. Similarly, Indiana Code section 34-55-8-7 allows the proceedings supplemental court to order “any property, income, or profits of the judgment debtor ... to be applied to the satisfaction of the judgment.” The proceedings supplemental court can enforce its orders by “attachment or otherwise.” Id. The court is also authorized by statute to “forbid transfers of property and choses in action” by the judgment debtor, thereby preventing the judgment debtor from engaging in fraudulent transfers and unfairly remaining judgment-proof. Id. Finally, section 34-55-8-7 grants the proceedings supplemental court continuing jurisdiction over a judgment debtor’s future income, profits, and assets. Id. Any of these methods can produce an assignment that is done intentionally even if it is done in compliance with a court order and is not cheerfully or willingly done.
Neither Trial Rule 69(E) nor the statute expressly authorizes a proceedings supplemental court to order a judgment debtor to execute an assignment of the debtor’s potential causes of action against third parties. But the purpose of proceedings supplemental is to discover property and reach assets that the judgment debtor has failed or refused to apply in payment of a judgment and which cannot be reached by an ordinary execution. Union Bank & Trust Co. v. Vandervoort, 122 Ind-App. 258, 264, 101 N.E.2d 724, 727 (1951). Judgment debtors ordinarily appear in a proceedings supplemental court precisely because they have not voluntarily paid their creditors and will pay, if at all, only if compelled-by the court. Accordingly, although the power to compel assignment is not spelled out in so many words in the relevant statutes, the powers that are explicit and the purpose of proceedings supplemental make clear that, just as other assets may be compelled to be transferred, a proceedings supplemental court has the power to compel a judgment debtor to assign the debtor’s potential causes of action against third parties. Thus, in my view, the- assignment ordered by the proceedings supplemental court was appropriate even though it was over Perkins’s objection.
An assignment of a bad faith claim ordinarily arises in the context of a judgment in excess of policy limits. Insureds not infrequently enter into voluntary assignments of potential bad faith claims against their insurers incident to settling the claims against them. The unusual feature of this case is that the insured professes satisfaction with his insurer’s performance. If that is found to be correct, of course, the insurer will prevail in defending the bad faith claim. But I do not think that permitting an involuntary assignment is likely to be a source of frequent litigation as the majority believes. In order to be worth spending the effort to pursue such a claim, even on a contingent fee, a bad faith claim must have some merit. Therefore, I do not share the majority’s concern that permitting involuntary assignment will be frequently invoked or- costly.
The issue presented by an involuntary assignment is whether Perkins or the Estate gets to evaluate the merits of the *1035 claim and decide whether to pursue it. For the reasons explained above, I -see no basis in conventional legal doctrine to prohibit an involuntary assignment. But if involuntary assignments are prohibited, the effect is to give Perkins the ability to control the claim. I think it virtually certain that most insureds who are willing to deny any validity to a bad faith claim will be judgment-proof. The insured who has nothing to lose may not be the most objective evaluator of the potential claim. He may be disinclined to pursue the claim because any recovery will inure to the benefit of the injured party to satisfy the judgment. He may even be motivated by animosity towards the injured party and also may decide not to pursue it because continued litigation could be an annoyance to him with no potential net reward. For all these reasons, the insured should not be able to defeat such a claim by disavowing it any more than he can destroy any other asset to preclude the injured party from levying on it to satisfy the judgment. And I see nothing in existing rules of law that should prevent the injured party (in this case the Estate) from attempting to prove its case if it believes the claim is worth pursuing. It seems an uphill battle in the face of Perkins’s avowed satisfaction with his insurer’s performance, but I see no reason to deny the Estate the ability to form its own judgment on that issue.
Because I believe the trial court ruled correctly in ordering assignment of Perkins’s claims against State Farm, I must address an additional argument against the assignment raised by State Farm but not addressed by the majority. State Farm argues that Perkins’s potential bad faith claim is not “property” within the meaning of Trial Rule 69(E) and Indiana Code section 34-55-8-7 because it is a contingent and unliquidated claim for damages in tort. I agree that Perkins’s potential claim is contingent and unliqui-dated. There has been no judicial finding of bad faith, fraud, or breach of contract, and Perkins • may be correct in his view that there is no merit to these claims. I disagree, however, that because Perkins’s potential claim is unliquidated and contingent, it is not “property” within the meaning of Indiana’s statutory provisions governing proceedings supplemental to execution. Several forms of choses in action have been found to be property subject to proceedings supplemental. Most have been less speculative than an unliq-uidated tort claim. See, e.g., Burkett v. Bowen, 118 Ind. 379, 380-81, 21 N.E. 38, 38-39 (1889) (holding that promissory notes and mortgage owing to a judgment debtor and in the hands of a third party can be reached in proceedings supplemental); Fowler v. Griffin, 83 Ind. 297, 299 (1882) (holding that funds “and choses in action of the judgment debtor, in the hands of third parties,” can be reached in proceedings supplemental); Butler v. Jaffray, 12 Ind. 504 (1859) (holding that promissory notes payable to judgment debtors and fraudulently transferred to a third-party trustee can be reached in proceedings supplemental).
A judgment creditor can seek to attach whatever property a judgment debtor has. This principle is subject only to the exemption laws and is not limited to liquidated claims. A “chose in action” is the “right to receive or recover a debt, demand, or damages on a cause of action ex contractu or for tort or omission of a duty.” Picadilly, 582 N.E.2d at 339 n. 1 (quoting Black’s Law Dictionary 219 (5th ed.1979)). As such, it is an asset that may have value, however speculative. Moreover, there is specific authority for thé proposition that a debtor’s contingent and unliquidated 'cause of action against a third party is “property” that can be reached in a proceeding supplemental under Indiana law. In In re *1036 Great Lakes Steel &• Fabricating Industries, Inc., 83 B.R. 1015 (Bankr.N.D.Ind. 1988), a judgment debtor had a pending counterclaim against a third party. In a state court proceeding • supplemental, the judgment creditor had been allowed to attach the unliquidated and contingent counterclaim.. Id. at 1017. The judgment debtor subsequently filed for bankruptcy, and the bankruptcy court upheld the validity of the proceeding supplemental attachment order, thereby giving the judgment creditor the benefit of the contingent claim at the expense of other creditors of the judgment debtor. Id. at 1021. Notwithstanding the fact that the judgment debt- or’s counterclaim against the third party was contingent and unliquidated, the claim was the proper subject of a proceeding supplemental attachment order. Id. The bankruptcy court found that “to hold otherwise would permit a judgment debtor to keep its choses in action judgment-proof’ until the claim was settled or tried and would “render nugatory the continuing jurisdictional control” given the proceeding supplemental court by Indiana Code section 34-55-8-7. Id. at 1022. The bankruptcy court also agreed that future interests incapable of reasonable evaluation have not been subject to prejudgment attachment, This is consistent with “the general view that claims for unliquidated damages cannot be reached by attachment or garnishment process” before the party -seeking attachment or garnishment has obtained a judgment against the obligee. 6 Am.Jur.2d Attachment & Garnishment § 127 (2004). But the greater protection provided a defendant in prejudgment proceedings is not necessary in proceedings supplemental where the judgment creditor’s claim has already been adjudicated. Id.[14] I find the reasoning of the bankruptcy court in Great Lakes persuasive. I also note that decisions from other jurisdictions áre consistent with my reading of the Indiana statute permitting judgment creditors to attach “property.”[15] Accordingly, I believe that “property” in Trial Rule 69(E) and Indiana Code chapter 34-55-8 includes a judgment debtor’s contingent and unliquidated tort actions.
B. Direct Action Rule
The majority concludes that an “involuntary assignment of claims against carriers whose insureds do not believe they have been wronged by their insurance companies was inconsistent with the direct action rule.” For the following reasons, I disagree.
*1037 Indiana Law recognizes that an insured may assert a claim against an insurer for breach of the duty of good faith. USA Life One Ins. Co. v. Nuckolls, 682 N.E.2d 534, 541 (Ind.1997); Erie Ins. Co. v. Hickman by Smith, 622 N.E.2d 515, 519 (Ind. 1993). Indiana courts have also acknowledged causes of action brought by insureds for their insurers’ failure to defend them from liability in the third-party context. See, e.g., Gooch v. State Farm Mut. Auto. Ins. Co., 712 N.E.2d 38 (Ind.Ct.App.1999), trans. denied; Dimitroff v. State Farm, Mut. Auto. Ins. Co., 647 N.E.2d 339, 341 (Ind.Ct.App.1995). The Court of Appeals has explicitly refused, however, to recognize any bad faith action brought by a third-party claimant directly against the tortfeasor’s insurer. Menefee v. Schurr, 751 N.E.2d 757, 761 (Ind.Ct.App.2001), trans. denied; Dimitroff, 647 N.E.2d at 342; Eichler v. Scott Pools, Inc., 513 N.E.2d 665, 667-68 (Ind.Ct.App.1987). Courts applying this so-called “direct action rule” have reasoned that insurance companies do not have a special relationship giving rise to a duty of good faith to an injured third party/judgment creditor. See Menefee, 751 N.E.2d at 760; Bennett v. Slater, 154 Ind.App. 67, 73-74, 289 N.E.2d 144, 148 (1972). Similarly, courts do not view an injured party as a third-party beneficiary of the tortfeasor’s contract with the insurer. See, e.g., Hartman v. United Heritage Prop. & Cas. Co., 141 Idaho 193, 108 P.3d 340, 346 (Idaho 2005) (noting that the basis of the prohibition on direct actions is that the person allegedly injured by the insured is not a party to the insurance contract and has no rights under it); State Farm Mut. Auto. Ins. Co. v. Allen, 744 S.W.2d 782, 785-86 (Mo.1988); Schmalfeldt v. N. Pointe Ins. Co., 252 Mich.App. 556, 652 N.W.2d 683, 687 (Mich.Ct.App.2002) (stating that the insured contract benefits the insured and the injured plaintiff was “merely an incidental beneficiary of the contract who was not entitled to enforce the contract against the insurer”).
The majority holds that the forced assignment violates the direct action rule by permitting the Estate, as a third party, to sue Perkins’s insurer. I do not agree that the assignment implicates the direct action rule. The direct action rule is nothing more than an application of standard third-party beneficiary doctrines under contract law and a rejection of any special relationship between the insurer and a victim of the insured. To the extent policy considerations underlie the direct action rule, the concern is that permitting the insurer to be made (or to make itself) a party to the dispute between the insured alleged tort-feasor and an injured party may unfairly expose to the jury the “deep pocket” of the insurer in an action where the conduct of the insured is the issue. Allstate Ins. Co. v. Keltner, 842 N.E.2d 879, 884 (Ind.Ct.App.2006); Rausch v. Reinhold, 716 N.E.2d 993, 1002 (Ind.Ct.App.1999). This concern is not presented by a claim of bad faith refusal to pay claims because in that case the conduct of the insurer itself is in issue and the insurer is properly before the court.
The assignee of an insured’s bad faith claim against the insurer does not bring an independent claim or seek recognition of a duty of good faith running from the insurer to the assignee. Nor does the assignee claim to be a third-party beneficiary of the contract. Rather, the assignee merely stands in the insured’s shoes and enforces the insured’s claims against the insurer. See Pettit v. Pettit, 626 N.E.2d 444, 447 (Ind.1993). Accordingly, I do not agree that the assignment in this case authorized the Estate to bring an independent action asserting the right of a third party against State Farm. The Estate merely seeks to enforce whatever rights or claims State *1038 Farm’s first-party insured could have brought. I do not express any view as to the merit of such claims but believe that to the extent Perkins had a claim, it was validly assigned to the Estate.
Finally, I believe the majority is mistaken in its concern that permitting involuntary assignments will result in widespread use of that technique. Most insureds cheerfully assign bad faith claims to settle with a plaintiff who obtains a judgment in excess of policy limits. In the rare case where that does not occur, the plain-tiffljudgment creditor must evaluate the risks and potential rewards of pursuing a bad faith claim on behalf of an insured when the insured professes satisfaction with the insurer’s performance. The practical barriers to such a claim will deter many if not most such claims. I would permit the Estate to take its chances.
DICKSON, J., joins.

. See, e.g., Laube v. Campbell, 215 F.R.D. 655, 657 (M.D.Ala.2003) (finding that corrections officers were not entitled to intervene as of right under Rule 24 of the Federal Rules of Civil Procedure in an ongoing lawsuit because they merely alleged that the lawsuit exposed them to a speculative risk of future civil and criminal liability); Bolden v. O'Connor Cafe of Worcester Inc., 50 Mass.App.Ct. 56, 734 N.E.2d 726, 731, 735 n. 17 (Mass.App.Ct.2000) (stating that "having to engage in subsequent litigation is not, in and of itself, an impairment to a proposed intervener’s interest which justifies intervention” under statute requiring a would-be-intervenor to "claim an interest relating to the property or transaction which is the subject of the litigation”).

. In the typical case, a garnishee’s presence is necessary in proceedings supplemental in order for the proceeding supplemental to acquire jurisdiction over the debtor’s property that is in the garnishee's possession. The garnishee’s presence may also aid in the resolution of any factual disputes regarding whether the garnishee possesses the debtor’s property. In this case, State Farm's presence was not needed to establish the proceeding supplemental court’s jurisdiction over Perkins’s bad faith claim because that claim was already in Perkins’s sole possession. If the claim lacks merit, it has no value, but it is nonetheless assignable.

. Accord. McClure Oil Corp. v. Whiteford Truck Lines, 627 N.E.2d 1323, 1326 (Ind.Ct.App.1994) (holding that contingent interest .of judgment debtor as remainderman in any surplus remaining in trust account after payment ' of trust to the judgment debtor’s creditors according to trust terms was capable of attachment in proceeding supplemental); Sandler v. Gilliland, 605 N.E.2d 1174, 1178 (Ind.Ct.App.1993), trans. denied (holding that the contingent interest of a judgment debtor in - the -surplus, if any, of an escrow account created for the benefit of a judgment debtor's creditors was subject to attachment in a proceeding supplemental).

. In Puzzo v. Ray, 386 So.2d 49, 51 (Fla.Dist. Ct.App.1980), the court concluded that “property” under the Florida supplementary proceedings statute includes a debtor’s cause of action for conversion against a third party. The Florida court held that a construction of the Florida statute to include a debtor’s potential causes of action furthered the remedial purpose of proceedings supplemental to provide the judgment creditor a speedy and direct means to discover and claim assets that cannot readily be reached by ordinary legal process. Puzzo, 386 So.2d 49. In Associated Ready Mix, Inc. v. Douglas, 843 S.W.2d 758, 761-62 (Tex.App.1992), the court concluded that "property” under the Texas turnover statute includes the debtor’s potential causes of action against third parties.