THOMAS F. COOPER, Appellant-Petitioner,
v.
LAURA J. FAZIO, Appellee-Respondent.
No. 71A04-0604-JV-178
Court of Appeals of Indiana.
December 18, 2006
MARK S. LENYO, South Bend, Indiana, ATTORNEYFOR APPELLANT.
GREGORY K. BLANFORD, The Blanford Law Office, South Bend, Indiana, ATTORNEY FOR APPELLEE.

MEMORANDUM DECISION
SULLIVAN, Judge.
Appellant, Thomas Cooper, appeals from the trial court's denial of his motion to modify his child support obligation.
We affirm.
The record reveals that on October 4, 1995, Appellee Laura Fazio filed a petition to establish the paternity of her twin daughters, A.F. and K.F., claiming that Cooper was their father. Eventually, on September 10, 1997, the trial court entered an order establishing that Cooper was the father of the twins. As part of the paternity order, the trial court ordered Cooper to pay $275 per week in child support. On March 15, 2000, Fazio filed a rule to show cause, and at the hearing thereon held on April 17, 2000, the trial court found that Cooper was in arrearage on his child support obligation in the amount of $4,587. The trial court ordered Cooper to pay $25 per week toward the arrearage in addition to his existing obligation to pay $275 per week.
On May 14, 2003, Cooper filed a petition to modify his child support obligation in which he claimed that, at the time when the support order had been entered, he was an engineer with the Union Pacific Railroad, where he had been employed for several years. According to the petition, while employed by the Railroad, Cooper earned between $48,000 and $50,000 per year. Cooper claimed that he had been employed with Union Pacific until July of 2000, but that since December of 2000, he had been employed as an account specialist at U.S. Bank, where he earned $11.47 per hour. The petition claimed that, based upon his reduced earnings and Fazio's increased earnings, there had been a substantial and continuing change of circumstances which made the then-current order unreasonable.
On July 9, 2003, a hearing was held on Cooper's motion to modify. At the hearing, Cooper claimed that he left his job at the Railroad because he had low seniority as a locomotive engineer, he was being "bumped" from jobs, and often had to drive to work 100 miles away from where he lived. Cooper further claimed that he had to be "on call" and report to work within ninety minutes after being called. He also claimed that even though he was promoted, his pay was cut.
When cross-examined by Fazio's counsel, Cooper admitted that he left his job at the Railroad voluntarily, earning substantially less at his current job. He also admitted that he had told Fazio that, with regard to his then-current child support payments, that he "[wasn't] about to continue paying her this kind of money," and that he "would rather quit [his job at the Railroad] than pay that kind of money." Transcript Vol. 1 at 10-11. When asked whether "much of the reason, if not the entirety of why [he] quit [his] job, was because [he] didn't like to pay her that kind of money," Cooper answered, "Yes. You could say that." Id. at 11.
The trial court magistrate who presided over the 2003 modification hearing stated in part:
"[Cooper] expressed to [Fazio] that he was quitting so that he wouldn't have to pay child support. That is the one substance [sic] to the general rule that a non-custodial parent who pays child support is free to change jobs for a variety of reasons, taking a number of things into consideration and that we cannot hold fathers to involuntary servitude . . . . On the other hand, he's the one that told her he was quitting his job so that he doesn't have to pay support. I've never had this happen before. I've never had someone so blatantly just say I'm quitting so I don't have to support my children at the same level." Id. at 19.
Cooper later interjected that he "did not want, in the beginning, . . . to have these kids." Id. at 20. He also complained, "I attended the school of Notre Dame. I did not have money to pay for a family. I did not want to have children . . . . She had other options and yet she chose, unlike other single mothers that I know, to come after me for money . .. ." Id. Cooper further explained, "I feel like I'm being punished." Id. at 21. Despite the trial court's apparent lack of sympathy for Cooper and his attitude, it nevertheless reduced his child support obligation to $208 per week and ordered him to pay seven dollars per week toward the arrearage, for a total of $215 per week. There is no indication that Cooper sought to appeal or otherwise challenge the trial court's 2003 determination.
On November 17, 2005, Cooper filed another petition to modify his child support obligation. In this petition, Cooper again noted that he had been employed by the Railroad, but this time claimed that in June of 2000, he was "'bumped' from his position with the Union Pacific Railroad and was placed on layoff status for an indefinite period of time." App. at 17. The 2005 petition also claimed that Cooper was an account specialist at U.S. Bank, now making $13.52 per hour and earning approximately $25,000 in 2003 and approximately $28,000 in 2004. The petition then alleged that "[t]here is a substantial and continuing change of circumstance which makes the existing support order unreasonable in that [Fazio]'s wages have increased significantly, and the children are in school full time, greatly reducing the need for child care expenses for the two children." App. at 18.
The trial court held a hearing on this petition on December 28, 2005. At the hearing, Cooper again claimed that he had been "bumped" from his position at the Railroad. When the trial court judge, who was not the magistrate who heard the 2003 petition, asked him whether he quit or was "bumped," Cooper explained that "it was both," claiming again that he quit his job at the Railroad because of problems with seniority, pay, and inconvenience. Tr. Vol. 2 at 13. He further explained that when he told Fazio that she had "made [him] quit," that "[he] didn't mean that." Id. at 15. Fazio's counsel objected and argued to the trial court that Cooper was simply trying to relitigate the question of whether he had quit his job at the Railroadan issue Fazio claimed was decided at the 2003 hearing. Indeed, Fazio's counsel claimed that "just barely two years since the last order was entered and not a thing has changed other they my client's income has increased." Id. at 17. Fazio's counsel also agreed that daycare expenses had changed, but not enough to allow a modification in child support. After the parties discussed an issue with Cooper's credit cards, the trial court stated:
"I believe that there isthe time does come into play at some point. I don't know what that point necessarily is, but, if you have the same job for . . . a period of ten years, then I think that in my mind, that kind of does away with the argument that . . . I voluntarily reduced. I don't think we've locked people in for life." Id. at 26-27.
The trial court then indicated that it would listen to the tape recordings of the 2003 modification hearing.
On January 11, 2006, the trial court entered an order which reads in relevant part:
"The Court, having reviewed the hearing tape from 7-9-03 hearing, finds that Magistrate Jane Miller made a legal finding that [Cooper] quit his job `so that he didn't have to pay child support.' [Cooper] confirmed under oath that he `voluntarily terminated his position with the railroad,' and that he sent an e-mail to [Fazio] that he would `rather quit than pay that kind of money.'
On 7-9-03, the Court imputed [Cooper]'s income to be $942.00 and after granting certain credits, ordered [Cooper]'s child support obligation to be $208.00 per week, plus $7.00 on the arrearage.
This Court finds no changed circumstances so substantial and continuing as to make the terms of the previous child support order unreasonable. Furthermore, this Court does not have the power to undo the previous Judge's finding.
Applying [Fazio]'s current income to the child support worksheet and retaining [Cooper]'s imputed income from the Court's Order of 7-9-03, results in a child support obligation that is not 20% different than the previous order of the Court.
Accordingly, [Cooper]'s Petition to Modify Child Support is denied." App. at 10.
Cooper filed a Notice of Appeal on February 10, 2006.
Indiana Code § 31-16-8-1 (Burns Code Ed. Repl. 2003) governs modification of child support orders and provides in relevant part that:
"Provisions of an order with respect to child support . . . may be modified or revoked. Except as provided in Section 2[1] of this chapter, modification may be made only:
(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
(2) upon a showing that:
(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed."
Generally, decisions regarding child support are left to the sound discretion of the trial court, and we will not disturb the trial court's decision absent an abuse of discretion or a determination that is contrary to law. Thurman v. Thurman, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002). Further, the party seeking modification of child support bears the burden of proving the necessary change in circumstances to justify modification. Weiss v. Frick, 693 N.E.2d 588, 590 (Ind. Ct. App. 1998), trans. denied. Because Cooper bore the burden of proof and was not the prevailing party below, he is appealing from a negative judgment. See Counceller v. Counceller, 810 N.E.2d 372, 377 (Ind. Ct. App. 2004). We will reverse a negative judgment only if the trial court's decision is contrary to law, and in determining this, we must determine if the undisputed evidence and all reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one. Cooper v. State, 760 N.E.2d 660, 665 (Ind. Ct. App. 2001) (an appeal from a conviction for felony non-support of a dependent child), trans. denied.
Cooper first claims that the trial court erred in concluding that it had no authority to change the ruling of the court after the 2003 modification hearing. In addressing this claim, we note that the issue of modification of support is subject to the continuing jurisdiction of the trial court. Pettit v. Pettit, 612 N.E.2d 1090, 1093 (Ind. Ct. App. 1993), trans. granted, opinion adopted in relevant part by, 626 N.E.2d 444 (Ind. 1993). Indeed, "[i]nquiry into changed circumstances for the purpose of support modification is ongoing in nature; therefore, a prior hearing cannot bar evidence of subsequent substantial and continuing changes in circumstances." Id. (emphasis supplied). The corollary of this rule would be that a party may not re-challenge a support order based upon the same circumstances considered in reaching the prior decision. Otherwise, there would be no finality to decisions because they could be repeatedly relitigated. See, generally, Am. Family Mut. Ins. Co. v. Ginther, 803 N.E.2d 224, 230 (Ind. Ct. App. 2004) (discussing issue preclusion, also known as collateral estoppel), trans. denied.
Thus, although the trial court had continuing jurisdiction to consider whether there had been changes in circumstances since the 2003 order, it could not revisit the issue decided in the 2003 orderthat Cooper quit his higher-paying job in an attempt to lower his child support payments to Fazio. We read the order of the trial court on appeal to comply with this notion. In other words, the trial court did not conclude that it had no authority to consider changes in circumstances since the 2003 order; it instead correctly noted that it could not revisit the issue decided in the 2003 order.
Many of the cases Cooper cites simply stand for the proposition that not all reductions in earning or changes in employment constitute voluntary underemployment which would justify imputing income. That is not what is at issue here, however. In this case, in a modification hearing two years prior to the modification decision on appeal, Cooper admitted to having quit his job so that his child support obligation would be lowered. He seems to claim that the situation since the 2003 hearing has changed sufficiently to justify a modification, but the heart of his argument is still nothing more than a rehashing of his 2003 argument.
Cooper emphasizes that, at the time of the hearing, he had been employed by the Bank for two more years. Cooper cites Apter v. Ross, 781 N.E.2d 744, 764 (Ind. Ct. App. 2003), trans. denied, in support of his position that he should therefore not be considered to be underemployed. In Apter, the father admitted that he was buying fewer homes in his real estate business, which the trial court viewed as an intentional reduction in income. Id. at 763-64. Upon appeal, the Apter court disagreed, noting that there is no basis for concluding that a parent is underemployed when the level of his earnings has remained steady for a number of years. Id. at 764. Although the father in Apter had admitted that his business had slowed, the evidence showed that his yearly income had been consistently increasing. Id. Thus the court held that it was unreasonable to consider him underemployed. Id.
By contrast, in the present case, Cooper's income had neither increased nor remained steady. Instead, he admitted to voluntarily quitting his higher-paying job at the Railroad and, more importantly, admitted to doing so specifically to avoid paying higher child support payments. Thus, even to the extent that Cooper's continued employment at the Bank could be said to be a change in circumstances, we cannot say that the trial court erred in determining that this, coupled with Cooper's prior admission as to why he quit his job at the Railroad, did not constitute a substantial and continuing change in circumstances which rendered the current support order unreasonable.
Cooper's argument could be taken to mean that even though he may have quit his former job in order to lower his child support payments, he cannot be said to have "locked" himself into his former salary for the rest of his life. In other words, if Cooper worked at his current job with U.S. Bank ten years from now, could it then still be said that he was voluntarily underemployed?[2] Regardless, we need not decide this question here. Cooper's 2003 petition to modify alleged that he was effectively pushed out of his job at the Railroad and that he had to take a lower paying job with U.S. Bank. But at the 2003 hearing, he admitted that he quit his better-paying job so that he would not have to continue to pay a high amount of child support. His 2005 petition again claims that he was pushed out of his job at the Railroad and now earns less money at the Bank. Thus, Cooper wanted the trial court to conclude that because Cooper was still employed at the Bank in 2005, he was no longer voluntarily underemployed. However, given Cooper's admission at the 2003 hearing, we cannot say that the trial court erred in rejecting this argument.
Cooper also claims that there was insufficient evidence to support the trial court's determination that there had not been a sufficient change in circumstances to warrant modification of his child support. We note that it was Cooper's burden to prove that modification was warranted under I.C. § 31-16-8-1, yet his petition alleged almost precisely what had been alleged in the 2003 petition which had already been denied: that Cooper had effectively been forced out of his position at the Railroad and now earned substantially less as a bank employee. Cooper does briefly claim that Fazio's increased salary, which he claims rose from approximately $42,000 in 2003 to approximately $59,000 in 2005, would alone support modification of his child support. Cooper refers to Kirchoff v. Kirchoff, 619 N.E.2d 592, 596 (Ind. Ct. App. 1993), disapproved of on other grounds by Merrit v. Merrit, 693 N.E.2d 1320, 1324 n.4 (Ind. Ct. App. 1998), in which the court noted that this court had found no abuse of discretion in a trial court's modification of a support order on the basis of changes in the relative financial resources of both parents alone.
We note, however, that in MacLafferty v. MacLafferty, 829 N.E.2d 938 (Ind. 2005), our Supreme Court more recently interpreted I.C. § 31-16-8-1, concluding:
"In addition to providing a bright-line test for a parent who seeks modification solely on grounds of change in income, it seems to us that, as a practical matter, the Legislature has effectively established a bifurcated standard for modification, Subsection (2) covering situations where a parent seeks modification solely on grounds of change in income and Subsection (1) covering all other situations (including situations alleging a change in income and one or more other changes). It is true that, as a matter of pure logic, a parent could seek modification solely on grounds of change in income under Subsection (1) . . . . But we do not believe that the Legislature would consider a change in circumstances standing alone (i.e., without any other change in circumstances) that would change one parent's child-support payment by less than 20% to be `so substantial and continuing as to make the terms [of the prior order] unreasonable.' Indeed, it is hard to see the reason the Legislature would have enacted Subsection (2) at all if a parent could receive a modification under Subsection (1) where the only changed circumstance alleged would change one parent's payment by less than 20%." Id. at 942 (emphasis supplied).
The MacLafferty court declined to hold that a modification could never be made under Subsection (1) where the changed circumstance alleged was a change in one parent's income which would change the child support payment by less than twenty percent: "There may be situations where a variety of factors converge to make such a modification permissible under the terms of the statute." Id. See also Davis v. Knafel, 837 N.E.2d 585 (Ind. Ct. App. 2005) (following MacLafferty and reversing modification of child support where, despite father's rather substantial increase in income, application of child support guidelines would not have resulted in an obligation which differed by more than twenty percent from previously ordered amount).
Here, the trial court found that with Fazio's increased income, and imputing the same amount of income to Cooper as used in the 2003 order, application of the child support guidelines did not result in an obligation which differs by more than twenty percent from the then-current obligation. Other than attacking his underemployment and subsequent imputed income, an attack which we have rejected above, Cooper points to nothing upon appeal which would call into doubt the trial court's calculations in this regard. Nor does there appear to be any of the sort of "convergence of circumstances" envisioned by the MacLafferty court which would justify modification under I.C. § 31-16-8-1(1). In short, we cannot say that the trial court erred in denying Cooper's petition to modify his child support obligation.
The judgment of the trial court is affirmed.
ROBB, J., and BARNES, J., concur.
NOTES
[1] Indiana Code § 31-16-8-2 (Burns Code Ed. Supp. 2006), which is not at issue in the present case, allows under certain circumstances a Title IV-D agency authorized under the federal Social Security Act to petition for modification of child support to include basic health and hospitalization coverage for the child.
[2] See Crowe v. Crowe, 247 Ind. 51, 211 N.E.2d 164 (1965) (holding that passage of time alone justified modification of child support where initial order was issued when child was nine months old and child was ten years old by the time of the petition to increase support); Vore v. Vore, 563 N.E.2d 154 (Ind. Ct. App. 1990) (holding that the Crowe holding was still valid under current statutory scheme and concluding that although it is not an abuse of discretion to grant a modification due to the passage of time, neither does a trial court abuse its discretion in denying an increase in support due to the passage of time alone).