**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 11 2012, 9:06 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DALE W. ARNETT**
Winchester, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHAD E. ASLINGER, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 68A04-1205-DR-259 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE RANDOLPH CIRCUIT COURT
The Honorable Jay L. Toney, Judge
Cause No. 68C01-9907-DR-160

**December 11, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

After suffering several heart attacks and seizures, Chad E. Aslinger fell behind on his child support obligation because he could no longer work. Even though Aslinger's arrearage reached at least $2,431, he managed to acquire cigarettes that were purchased by his girlfriend and travel to Florida on a vacation financed by his mother. Based on these facts, the trial court found Aslinger in contempt of court for failure to pay child support.

Aslinger appeals the trial court's contempt order, contending that the State failed to prove that Aslinger's failure to pay child support was willful and that he had the ability to pay, inasmuch as he was severely ill, which prevented him from seeking employment, and the State presented no evidence to the contrary.

The State does not dispute Aslinger's arguments. Indeed, page one of the State's Brief states: "In this appeal the State acknowledges that the trial court's order may be subject to reversal." Agreeing with both parties that the State failed to show that Aslinger's failure to pay child support was willful and that he had the means to pay it, we reverse.

FACTS

Dawn R. Aslinger filed a petition for dissolution of marriage on July 7, 1999, and the dissolution decree was entered on November 21, 2002. On June 15, 2007, the trial court awarded Dawn sole custody, and Aslinger was ordered to pay $60 per week in child support.

At the time of the first show cause hearing on November 4, 2011, Aslinger had not paid child support since August 4, 2011. As of August 10, 2011, Aslinger's arrearage was $2,431. Thirty-nine-year-old Aslinger explained that he had failed to make any payments since that time because of his deteriorating health, namely, several heart attacks and constant seizures. Aslinger further detailed that his doctor, Dr. Alison Symes, had instructed him not to work. Although Aslinger had made several child support payments, he stated that it was his girlfriend who had actually made the payments and who had been supporting him since he became ill.

Dr. Symes is Aslinger's family practitioner and prescribed Aslinger Plavix, Lithium, aspirin, and medication for blood pressure and for his muscles. A letter from Dr. Symes written on St. Vincent Physician Network letterhead and dated August 18, 2011, stated:

> To Whom it May Concern,
>
> Chad has asked me to confirm that he is unable to preform [sic] his usual occupation at present. He had a history of coronary artery disease and two confirmed MIs. He has bipolar disease – improved in control. However, he is suffering from recurrent intermittent unexpected episodes which may be atypical partial complex seizures. These are currently being investigated. Until they are clarified, he is unable to drive related to work, or operate equipment.

Amended Appellant's App. p. 33.

Aslinger had worked for a contractor who required him to operate heavy equipment. Because Aslinger could not operate heavy equipment, he could no longer work for the contractor and was not receiving any disability or job-related benefits from

3

that employment. Additionally, Aslinger had not looked for work for more than a year, and although he was preparing to apply for social security, he had no money, means, or property with which to pay child support. At the close of the November 4, 2011 hearing, the trial court decided that it did not have enough information and directed Aslinger to gather his medical information and provide it to the State through his lawyer.

The second show cause hearing was held on April 17, 2012. At that time, Aslinger's most recent child support payment had been made on February 15, 2012. His girlfriend was still supporting him with her disability payments. Aslinger had suffered another heart attack, for a total of three, and was still experiencing seizures. Aslinger was not on medication for his seizures, explaining that Dr. Syme wanted him to see a neurologist. Aslinger was still on Plavix for his heart and Lithium for his bipolar disorder.

As of April 12, 2012, Aslinger's arrearage was $3,376. He had applied for social security benefits in January but had not received a ruling. Aslinger was going to see another doctor for the social security application the next day. Aslinger explained that he could not work because the extent to which the seizures affected his arm.

Because Aslinger's mother's health was failing, she paid for a trip to Disney World for Aslinger, his brother, and his brother's children. Aslinger's brother drove them, and they were gone for about seven to ten days. While in Florida, Aslinger consumed several alcoholic beverages and was asked to leave the establishment because

4

he was intoxicated. Aslinger also smoked about a pack of cigarettes a day, which his girlfriend bought for him.

In light of these facts and Aslinger's arrearage, when Aslinger was asked why he should not be sent to jail, he stated that he wanted to work on becoming healthy again so that he could get his child support paid up and begin to make regular payments. He said that he still did not have the money, means, or property to pay his child support.

At the conclusion of the hearing, the trial court stated:

> Well this is the story I often hear, yes I have cigarettes, I have alcohol, I have vacations, I do this, I do that, I never have to pay for any of it. Everybody in my life takes care of me, pays for me. Mr. Aslinger your [sic] well enough to go on vacation you are not worried about seizure [sic], you are not worried about being away from your physician, your doctor, not worrying about what medication you need at that point, and yet you can not [sic] do anything to pay your child support. You are not even looking for work and yet you are well enough to travel a thousand miles, drink to such excess that somebody thinks you have had too much and ejects you from this bar or wherever you were ejected from. You are not making efforts to pay your support. You may have had some health problems, but again when you make no efforts at all which I think was your testimony, you are not making efforts to find work at this time.

Vol. 3 Tr. p. 15. Aslinger now appeals.

## DISCUSSION AND DECISION

Our Supreme Court has established that "[o]nly upon a finding by the court that the delinquency was the result of a willful failure by the parent to comply with the support order and that the delinquent parent has the financial ability to comply is contempt available." Pettit v. Pettit, 626 N.E.2d 444, 447 (Ind. 1993). Here, the State

5

concedes that "[t]he trial court's contempt order failed to make either of these determinations that are required under the Pettit decision." Appellee's Br. p. 8.

More particularly, at the November 4, 2011 hearing, Aslinger produced a letter from his doctor relating that he was unable to work because of his heart problems, bipolar disorder, and seizures. Amended Appellant's App. p. 33. The State failed to produce any evidence to contradict Aslinger's evidence regarding his health problems.

The trial court also expressed concern that Aslinger had money for alcohol, cigarettes, and vacations, which required him to travel thousands of miles, but he could not pay his child support. Vol. 3 Tr. p. 15. Despite the trial court's obvious frustration, there was no finding that Aslinger is able to work or has the ability to pay support. Indeed, Aslinger testified in November 2011 and in April 2012 that he had no money or means to pay support. The State produced no evidence to the contrary. Under these circumstances, there is insufficient evidence to support the trial court's contempt order.

While we acknowledge that from the trial court's statement, it may have believed that Aslinger could get funds from his girlfriend, who paid for his cigarettes and occasionally paid his child support or from his mother, who paid for the Florida vacation, it made no such findings. In any event, the evidence failed to show that Aslinger could actually acquire these funds from friends or family to help with his support obligation.

The judgment of the trial court is reversed.

RILEY, J., and BARNES, J., concur.

6