**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 03 2013, 8:23 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**SARAH L. JACOBSON**
Apple Valley, Minnesota

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE MARRIAGE OF:   )
                                    )
SARAH L. JACOBSON,                  )
                                    )
   Appellant-Respondent,            )
                                    )
       vs.                       )     No.  32A01-1210-DR-465
                                    )
MATTHEW C. JACOBSON,                )
                                    )
   Appellee-Petitioner.             )

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-0808-DR-111

**May 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Sarah Jacobson ("Mother"), pro se, appeals the trial court's denial of the post-dissolution petition for contempt she filed against Matthew Jacobson ("Father"). Mother raises three issues, which we restate as 1) whether the trial court erred in concluding that Father paid the full amount of child support due in 2011; 2) whether the trial court erred in concluding that Father had acted appropriately in seeking medical attention for the parties' son; and 3) whether the trial court erred in ordering Mother to pay Father's attorney fees. Concluding the trial court did not err in any respect, we affirm.

## Facts and Procedural History

Mother and Father were married in 1996, and are the parents of two children, Z.J., born in 1996, and C.J., born in 2000. The parties' marriage was dissolved in 2010, pursuant to a Decree of Dissolution awarding Mother legal and physical custody of the children with Father to have parenting time as specifically set forth therein. Father was to pay weekly child support of $421.00 "[e]ffective the first Friday following this Decree . . . ." Appellant's Appendix at 26. Father paid child support via income withholding order, and because of his pay schedule, actually paid $842.00 bi-weekly.

On May 29, 2012, Mother filed a petition for contempt alleging, inter alia:

> 5. That, base [sic] upon said Order regarding child support the Father was to pay the mother $421 weekly and failed to do so for the pay period ending December 31, 2011. . . .
> 6. That, based upon said Order regarding the mother's legal and physical custody of [the children] the father during his Spring Break 2011 parenting time failed to notify the mother of an accident involving [Z.J.] and subsequently refused the mother's request to get medical treatment for [Z.J.] twice before finally taking him to the doctor.

7. That, based upon said Order regarding the mother's legal and physical custody of [the children] the father during his Spring Break 2011 parenting time did not inform the mother that he was seeking medical care for [Z.J.] until after the visit was over. Father does not have the right to make medical decisions for [Z.J.] and violated the mother's rights by not informing her. . . .

Id. at 37. Following a hearing in August 2012, the trial court took the matter under advisement and thereafter issued an order, stating in pertinent part:

[Mother's] Petition for Contempt is denied. The Court finds that [Mother] has not shown by clear and convincing evidence that [Father] willfully violated a court order. The evidence established that in 2011 there were 52 Fridays for purposes of child support and that [Father] in fact paid for 52 weeks of support for a total support payment for the year of $21,892.00.

* * *

Finally, the Court finds that [Mother] has not shown by clear and convincing evidence that [Father] willfully violated a court order during spring break 2011 regarding [Z.J.'s] ATV accident. The evidence establishes that [Father] did in fact take [Z.J.] to the doctor for a medical evaluation. There was evidence that [Father] did this at [Mother's] insistence, and that she was aware of the doctor visit.

* * *

[Father] requested an award of attorney fees defending [Mother's] latest petition for contempt. [Father] incurred $974.60 in fees and expenses defending the petition. The Court recognizes that [Mother] is not represented by counsel. However, [Mother's] petition was wholly without merit. . . . Absent an award of attorney fees, it appears [Mother] will continue to file motions and not take advantage of the opportunity to work through the parenting coordinator. Therefore, the Court orders [Mother] to pay $974.60 towards [Father's] attorney fees within 60 days.

Id. at 18-19. Mother filed a motion to correct error which the trial court denied. Mother now appeals. Additional facts will be provided as necessary.

3

## Discussion and Decision

### I. Standard of Review

Generally, we review a trial court's ruling on a petition for contempt for an abuse of discretion and affirm unless, after reviewing the record, we conclude that the decision is against the logic and circumstances before the trial court and have a firm belief that a mistake has been made. S.W. ex rel. Wesolowski v. Kurtic, 950 N.E.2d 19, 21 (Ind. Ct. App. 2011). However, when the appellee does not file a brief, as Father has not in this case, we need not undertake the burden of developing arguments on his behalf, and we may reverse if the appellant has made a prima facie case of error. Id.

### II. Child Support

Contempt is available to assist in the enforcement of child support orders where the court finds a delinquency was the result of a willful failure to comply with the support order and where the obligated parent has the financial ability to pay. Pettit v. Pettit, 626 N.E.2d 444, 447 (Ind. 1993). Mother contends the trial court erred in finding Father had not willfully violated a court order regarding child support.

Father was ordered to pay $421 per week in child support, beginning with the Friday following the entry of the Decree of Dissolution. Father's child support was withheld from his biweekly paychecks, so Father paid $842 every two weeks. In late 2011, Father's employer sent out the following notice:

> Pay for Week of Dec 25th – Dec 31st, 2011 (also referred to as 53rd week of pay)

4

This is the year where there is an extra week in P13 from an accounting perspective, for salaried employees this means that we pay out 1 week of salary in P13Wk5. The one week pay is done to stay aligned in 2012 with a biweekly pay schedule that continues to follow weeks 2 and 4 of each period as in past years.

[Mother's] Exhibit C. Father forwarded this notice to Mother with a note that she "should receive ½ of the child support this coming Friday as they have added an extra weeks pay due to our calendar ending with a 5[th] week. To make it simple you get ½ this week and then the full every 2 week payments start on 1/14." Id. However, the Hendricks County Clerk's child support payment history for the period December 1, 2011 to January 31, 2011, shows that payments of $842.00 were received on December 23, 2011, and January 13, 2012. No payment was received on December 30, 2011. [Mother's] Exhibit B at 3.[1] Mother's bank account summary for the period from December 16, 2011 to January 13, 2012, shows one deposit of $842.00 on December 28, 2011. [Mother's] Exhibit A at 2.[2] Mother therefore contends she is owed $421.00 in child support for the week ending December 30, 2011.

Father did not dispute that Mother received no child support payment from his December 30, 2011 paycheck. He testified, however, that he was ordered to pay child support of $421.00 weekly on Fridays, and there were fifty-two Fridays in 2011; therefore, he owed a total of $21,892.00 in child support for 2011. Father's December 30, 2011 paystub shows that, although no child support was withheld from that paycheck, he had paid

---

[1] During this period, payments were also received on December 9, 2011, and January 27, 2012. Id.

[2] The Clerk's Payment History shows the December 23, 2011 payment was disbursed on December 27, 2011. [Mother's] Exhibit B at 3.

$21,892.00 in child support year-to-date. [Father's] Exhibit 1. The trial court confirmed that there were fifty-two Fridays in 2011 and found that Father had not violated the child support order. We, too, confirm that there were fifty-two Fridays in 2011, and since Father's weekly child support obligation of $421.00 was to be paid on Fridays, Mother has failed to make a prima facie case of error in the trial court's finding that Father was not in contempt.[3]

### III. Medical Care

While Father had the children during their spring break in 2011, Z.J. rolled a four-wheeler he was riding and "was a little shaken." Transcript at 23. He sat down for a while, but returned to riding with his friends later that day. It is unclear from the record on what day this happened, or how Mother came to know about the incident, but at Mother's insistence, Father took Z.J. to the doctor on March 25, 2011, where he was diagnosed with a contusion on his shoulder and advised to follow up with his physician in five days if it had not improved. See [Father's] Exhibit 3. Five days after the visit, Z.J. was again with Mother, and he did not return to the doctor.

Mother alleged in her petition for contempt that Father "violated [her] rights" as sole legal and physical custodian by first not telling her about the incident, then not taking Z.J. to

---

[3] Mother argues in her brief that because Father's first paycheck in 2011 would have been received on January 7, 2011, an $842.00 payment from that paycheck would have represented $421.00 for the week ending Friday, December 31, 2010, and $421.00 for the week ending January 7, 2011. Therefore, although Father's December 30, 2011 paystub shows "year-to-date" child support payments of $21,892.00, only $21,471.00 of that amount was attributable to 2011. Mother may very well be correct; however, she did not make this argument to the trial court at the hearing and on the evidence submitted, consisting only of December 2011 and January 2012 paychecks, bank account summaries, and child support payment histories, we cannot say the trial court abused its discretion in finding Father had complied with the child support order. To find otherwise would require assuming facts not in evidence.

the doctor until she had asked him to twice, and then not telling her about the visit until it

was over. Father's counsel asked Mother during the hearing:

> Q: Okay ma'am do you understand that when [Father] has the children even though you're the custodial parent, he is responsible for their medical care, their daycare, their transportation, their meals, their entertainment, do you understand that?
> A: No I do not.

Tr. at 16. Later, Mother, representing herself, questioned Father:

> Q: Did you ever let me know that you were going to take him in so that I could talk to the doctor?
> A: I would assumed [sic] the two (2) texts [sic] messages telling me to take him to the doctor or you can't ride would be permission enough to take him to the doctor at that point.
> Q: Are you aware that I'm, I've got full legal custody of [Z.J.]?
> A: I am aware that you have full legal custody of [Z.J.].
> Q: Do you understand that that gives me a say in his medical treatment?
> A: He was with me on spring break in southern California so I assumed I had because I am his father to make the decision on what his medical needs are at that point.
> Q: Do you understand what full legal means as far as it involves medical decisions?
> A: It involves medical decisions, yes.
> Q: Do you understand the repercussions of my having full that I'm supposed to be given an input if not a say on medical decisions?
> A: As I would expect I would.
> Q: And you denied me that right?
> A: I did not deny you, you asked me to take him to the doctor and I took him to the doctor.

Id. at 33-34. It appears that even though Father was exercising his parenting time with the

children in California, Mother believes she was entitled not just to be notified of the incident,

but also allowed to somehow participate in the doctor's visit and dictate the care Z.J.

received.

We note first that there is no specific court order regarding the children's health care. Indiana Code section 31-17-2-17 provides that generally, "the custodian may determine the child's upbringing, including the child's education, health care, and religious training."[4] The Indiana Parenting Time Guidelines provide that "[e]ach parent shall immediately notify the other of any medical emergencies or illness of the child that requires medical attention." Ind. Parenting Time Guideline I(D)(4). Father testified that when Z.J. rolled the four-wheeler, he was wearing a helmet, and although he was a little shaken, he did not seem to be in distress or pain and Father did not think he needed medical attention. He also did not immediately notify Mother because he did not think there was any need to worry her. He ultimately took Z.J. to the doctor at Mother's insistence because she was concerned about the possibility of a concussion, and the doctor diagnosed Z.J. with a shoulder contusion. Mother testified that when Z.J. returned to her custody at the conclusion of spring break, she did not take him to the doctor even though she was not sure Father had specifically requested the doctor check him for a concussion nor did she take him to the doctor for a follow-up visit about his shoulder, because she did not think there was anything seriously wrong.

We cannot say the trial court abused its discretion in refusing to find Father in contempt for not immediately notifying Mother of Z.J.'s mishap or allowing her to somehow participate in the doctor visit. In the interest of a spirit of cooperation and open communication, perhaps Father should have informed Mother immediately about Z.J.'s four-wheeler accident. However, the parenting time guidelines only require immediate

---

[4] Mother cited Indiana Code section 31-14-13-4 in her brief for the same proposition. Section 31-14-13-4, however, applies to paternity actions.

notification of a medical emergency, which this did not appear to be. Moreover, although Mother as the custodial parent has the right to determine Z.J.'s health care, this was not an ongoing or serious health concern that required any specific decision-making. Z.J. was in Father's care at the time of the incident, Mother requested Father take Z.J. to the doctor, and Father did so. There is no basis for finding Father in contempt based on his actions and the trial court did not err in denying Mother's petition.

## IV. Attorney Fees

The trial court also ordered Mother to pay Father's $974.60 attorney fees incurred in defending her contempt petition. Mother does not fully develop an argument regarding this order, but does request we reverse the order. A trial court in its discretion may order a party to pay a reasonable amount of attorney fees in post-dissolution proceedings. Bessolo v. Rosario, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012), trans. denied. In assessing attorney fees, the trial court may consider such factors as the parties' relative economic circumstances, misconduct on the part of a party directly resulting in the other party incurring fees, and any other relevant factors. Id. Reversal is appropriate only when the trial court's decision is against the logic and effect of the facts and circumstances before the court. Julie C. v. Andrew C., 924 N.E.2d 1249, 1261 (Ind. Ct. App. 2010).

The trial court here found that despite the trial court's appointment of a Parenting Coordinator to assist the parties in overcoming communication and other barriers, "absent an award of attorney fees, it appears [Mother] will continue to file motions and not take advantage of" the Coordinator's assistance. Appellant's App. at 19. The Parenting

Coordinator was appointed at a May 23, 2012 hearing. Mother filed the instant petition for contempt on May 29, 2012, alleging contempt on Father's part for incidents occurring in March and December 2011. At the time of the hearing on August 6, 2012, Mother had not yet provided the Parenting Coordinator the information she needed to begin assisting the parties to resolve issues such as Mother raised in her petition. We cannot say the trial court abused its discretion in ordering Mother to pay Father's attorney fees considering her conduct in these proceedings.

## Conclusion

Mother has failed to demonstrate prima facie error in the trial court's denial of her petition for contempt or order that she pay Father's attorney fees. The order of the trial court is affirmed.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.